[No. 13798. In Bank. — May 13, 1891.]

## GIOVANI ONETO, APPELLANT, *v.* GIACOMO RESTANO, RESPONDENT.

LANDLORD AND TENANT — LEASE — EXECUTION — DELIVERY — FINDING. — A finding that a lease was duly executed will be construed to include its delivery.

ID. — RETENTION OF LEASE BY LESSOR. — The mere fact that a lease has always been in the possession of the lessor is not conclusive evidence that it has not been delivered so as to become operative; and where it is retained by either party with the consent of the other, it must be considered as delivered, if both understand that it has been executed and is in operation.

ID. — LEASE OF WATER RIGHT — POSSESSION AT TIME OF LEASE — ESTOPPEL — ADVERSE CLAIM OF TITLE — QUIETING TITLE. — A lessee of a water right who is in possession at the time the lease is given, and who did not enter under it, is not estopped from claiming an adverse title to the water right in an action by the lessor against him to quiet title thereto, which is brought after the expiration of the lease.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial.

The action was brought for the purpose of determining the title to a water right and water-ditch situated in or near the city of Sonora, in the county of Tuolumne,

and to obtain an injunction perpetually enjoining and restraining the defendant from interfering therewith. Further facts are stated in the opinion.

*F. W. Street,* and *A. L. Hart,* for Appellant.

A tenant cannot dispute his landlord's title, and the estoppel continues to the end of the tenant's occupation, unless there has been a repudiation of the tenancy and a subsequent adverse holding by the tenant. (*Tewksbury* v. *Magraff,* 33 Cal. 237.) One who joins in a lease which, upon its face, represents his property as belonging to another, and permits that lease to remain uncanceled upon the records of the county, cannot be permitted to defeat a title acquired on the faith of the lease by contradicting the language of his own admission. (2 Herman on Estoppel and Res Judicata, sec. 1058; *Mitchell* v. *Reed,* 9 Cal. 204; 70 Am. Dec. 647.) When a lease is on record to one who is in possession, he is presumed to hold under it, and this presumption, upon general principles, as well as under our registry law, must operate as a complete protection to subsequent purchasers in good faith. (Gear on Landlord and Tenant, 78; *Libbey* v. *Staples,* 39 Me. 166.)

*F. D. & G. W. Nicol,* for Respondent.

If the tenant did not take possession under the lease, but was in possession at the time the lease was taken, he may dispute his landlord's title. (*Tewksbury* v. *Magraff,* 33 Cal. 245; *Franklin* v. *Merida,* 35 Cal. 566; *Holloway* v. *Galliac,* 47 Cal. 474; *Peralta* v. *Ginochio,* 47 Cal. 460; *Pacific M. L. Ins. Co.* v. *Stroup,* 63 Cal. 153; *Davis* v. *McGrew,* 82 Cal. 138.) The production of a lease will not of itself show that the relation of landlord and tenant existed between the parties to the lease. (*Caldwell* v. *Center,* 30 Cal. 544; 89 Am. Dec. 131.) There must have been a delivery of the lease before the relation of landlord and tenant could arise. (*Davidson* v. *Ellmaker,* 84 Cal. 22.)

TEMPLE, C.— This is the second appeal in this case. The former appeal, like this, was taken by the plaintiff from a judgment in favor of defendant, and from an order denying his motion for a new trial. The judgment was reversed on the ground that the court failed to find that the use of the water by the defendant and his grantors had been adverse. (78 Cal. 374.)

After the case had been remitted to the trial court, the defendant was allowed to amend his answer so as to aver that for more than five years last past he has been using the water adversely to plaintiff and his grantors.

There is no claim in the answer of title on the ground that the use was adverse, unless such defense is involved in the simple allegation of ownership. In fact, the theory of the defense seems to be, that Bache, plaintiff's grantor, was the owner of a spring from which he had conducted water to his premises, in the city of Sonora; that by agreement with the Antoninis, through whom defendant derives his title, Bache and the Antoninis, some years afterwards, constructed a new ditch and flume, and took in other waters; that it was understood that the Antoninis and Bache should then share the water equally. The new water taken in was, defendant claims, just about equal to that which had previously been carried by the Bache ditch from the spring which belonged to him. So that by the arrangement with the Antoninis, Bache was able to secure a new ditch and flume in place of one which had become dilapidated and unserviceable, and still practically retain all the water he had before. And the court finds that it was agreed, when they arranged to rebuild, " that the water of said spring (the new water to be taken in), to be thereafter appropriated, together with the Bache spring, should belong to them in common, and to share equally in the use of the water each alternate day, for irrigating their respective gardens, and for culinary, domestic, and other useful purposes."

It is also found as a fact that they did open up another spring, constructed the ditch and flume as agreed, caused the waters of both springs to flow into it; and it is found that from that time, 1867, Bache and the Antoninis, and their respective grantors, have used the water on alternate days for irrigating their respective gardens, and for culinary and other useful purposes, continuously, peaceably, and uninterruptedly; that the new spring had not previously been owned, claimed, or appropriated by any person.

This state of things continued until May 1, 1877, some ten years, when Lorenzo Antonini, who had become sole owner, sold to David Sanguinnetti.

At that time, Bache and Sanguinnetti made and executed an agreement in writing, whereby Bache, in consideration of one dollar, did rent, lease, and demise to Sanguinnetti, for the term of ten years, one half of the water flowing in his ditch every alternate day. Sanguinnetti agreed to keep the ditch in repair on his premises, and to pay one half the expense of repairing the ditch and flume above his premises, and of a new flume if it should be necessary; and should the flume and ditch be flooded, both agreed to repair the same at their joint expense.

The parties continued to use the water after the lease as before, taking the whole of it each alternate day, and accordingly on the former appeal it was held this lease was for one half of the water, to be measured by using every other day. In short, the lease covered the very water right in controversy.

Sanguinnetti was a witness at the trial, and testified that he could not read or write, that he never had or heard of a lease, and that he always claimed the use of the water in his own right, and had so informed Mr. Bache. The court finds, however, the due execution of the lease, but also that it was retained by Bache, and never had been in the possession of Sanguinnetti. The finding

that the agreement was executed must be held to include delivery, for otherwise there is no finding upon this important point, and the word has been held to include all that is necessary to make an instrument complete and operative. There is evidence which tends to show that the parties believed they had executed the instrument, and that Sanguinnetti so understood it.

In regard to a lease, the mere fact that the instrument has always been in the possession of the lessor is not conclusive evidence that it has not been delivered so as to become operative. An ordinary deed is usually of value only to the grantee. The maker has no further interest in it. But an indenture of lease is a very different thing. It continues to be of fully as much interest to the landlord as to the tenant, and he has fully as much occasion for its possession.

Such agreements are usually executed in duplicate. But where it is retained by either party with consent of the other, it must be considered as delivered, if both understand that it has been executed and is in operation. Where the tenant enters under it, there can usually be very little question about it.

The due execution of the lease being found, the question arises as to its effect. It will be seen from the above statements that according to the findings of the court at the time of the execution of the lease, the parties were equally entitled to the use of the water, although some question might be made as to whether their interest was joint. So long as the water of the two springs was carried in the common flume, they were equally entitled to use the water. And so the parties had been continuously using it for more than ten years, and were so using it at the time the lease was made. Sanguinnetti, then, was in possession at the time of the demise.

The evidence upon which the court bases its finding is conflicting, confused, and contradictory. A. Antonini, upon whose testimony both parties chiefly rely, seems

uncertain as to the ownership of the property. The facts apparently shown by the evidence do not seem very conclusive upon that point, although, after a careful study of the transcript, we are satisfied there is evidence sufficient to justify every material finding.

Still, as there was much room for grave doubts upon the subject of ownership, it is altogether probable that the lease was executed after a claim made by Bache and a consideration of the matter by Sanguinnetti. In fact, it was most likely a compromise of threatened litigation. Bache conceded the free use of the water for ten years, in consideration of the acknowledgment of his title by Sanguinnetti. If it were a new question, we should say he could not now, having enjoyed the fruits of this compromise, go back upon it. But the rule is too thoroughly established to be open to question in this state. (*Tewksbury* v. *Magraff*, 33 Cal. 237; *Franklin* v. *Merida*, 35 Cal. 558; *Holloway* v. *Galliac*, 47 Cal. 474; *Peralta* v. *Ginochio*, 47 Cal. 460; *Pac. M. L. Ins. Co.* v. *Stroup*, 63 Cal. 150; *Davis* v. *McGrew*, 82 Cal. 138.)

The lease had expired by its terms before this litigation was commenced, and under the rule established by the above decisions, it constituted no estoppel as against the defendant.

Under the circumstances, it becomes unnecessary to pass upon the questions raised in regard to the verbal sale, and the claim that the defendant held the property adversely for five years since such alleged sale.

It follows that the judgment and order appealed from should be affirmed.

BELCHER, C., and VANCLIEF, C., concurred.

THE COURT. — For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

Rehearing denied.