[S. F. No. 9679. In Bank.—February 16, 1921.]

# W. H. SULLIVAN, Petitioner, v. SUPERIOR COURT OF MENDOCINO COUNTY et al., Respondents.

[1] MORTGAGE—DECREE OF FORECLOSURE—FAILURE TO PROTECT LEASE-HOLD—RIGHT OF PURCHASER—WRIT OF ASSISTANCE.—In an action for the foreclosure of a mortgage, where the owners of a leasehold interest in the premises were made parties, and the decree declared that such interest was subsequent and subordinate to the mortgage but prior and superior to all other liens, and ordered a sale of the premises free and clear from all liens without making any provision as to the leasehold interest, and such decree was allowed to become final without appeal, motion for a new trial, or other attempt to avoid or modify it, the right of the purchaser at the sale to possession of the entire premises, freed from the leasehold interest and other subsequent interests, upon receipt of the commissioner's deed, was absolute, and the court had no power to modify a writ of assistance so as to make the purchaser's possession subject to the leasehold.

[2] ID.—FORECLOSURE SALE—SUBORDINATION OF MORTGAGE TO LEASE-HOLD—LACK OF POWER OF COURT.—Where in an action for the foreclosure of a mortgage the decree declared that a leasehold was subordinate to the mortgage but superior to all other liens, the court could no more have subordinated the rights of the plaintiff to that of the lessees in making the sale than it could to the rights of the subordinate lienholders.

[3] ID.—PRIORITY OF LEASEHOLD TO OTHER SUBSEQUENT INTERESTS—SURPLUS PROCEEDS OF SALE—RIGHTS OF LESSEES.—Where a decree of foreclosure of a mortgage provided that a leasehold was prior and superior to all claims and liens except the mortgage, the lessees should have been given precedence in the distribution of the surplus proceeds of the sale after the satisfaction of the mortgage.

[4] ID.—BID OF LESSEES AT SALE—STATUS UNAFFECTED BY.—The fact that lessees whose leasehold was subject to a mortgage bid at the commissioner's sale on foreclosure of the mortgage an amount sufficient to meet the demand of the mortgagee's prior lien gave them no right to retain possession as against a higher bidder to whom the sale was made, since it was the duty of the commissioner to sell to the highest bidder.

[5] ID.—WRIT OF ASSISTANCE—RECITAL IN DECREE CONCLUSIVE.—Where a decree of foreclosure of a mortgage provided that in

2. Effect of foreclosure of mortgage upon leasehold rights, note, **Ann. Cas.** 1915A, 397.

case the purchaser should be refused possession a writ of assistance should issue without further notice, such provision was conclusive as against the parties in possession who were parties to the action.

[6] ID.—NOTICE OF APPLICATION FOR WRIT—WAIVER.—While it is true that a writ of assistance will not ordinarily issue without notice to the person in possession, the reason for such rule is not applicable where the waiver of such notice has been determined as between the parties by the decree.

[7] ID.—SETTING ASIDE OF EX PARTE ORDER.—An *ex parte* order granting a writ of assistance should not be set aside unless it is shown that it was improvidently or improperly made.

[8] ID.—WRIT OF ASSISTANCE—WHEN MATTER OF RIGHT.—Where parties against whom a writ of assistance was sought by the purchaser at a foreclosure sale were parties to the action and their rights were adjudicated by the decree, and there had been no change or modification of the right to possession arising under the terms of the decree, a writ of assistance was a matter of right.

[9] ID.—PROVINCE OF WRIT OF ASSISTANCE.—The province of a writ of assistance is to give effect to the decree of foreclosure, and should only be withheld where it appears that the rights of the parties have been changed by some subsequent agreement or event.

[10] ID.—ISSUANCE OF WRIT OF ASSISTANCE—MANDAMUS.—Where a decree of foreclosure has become final and no equity has arisen since the decree, the purchaser is entitled to resort to a writ of *mandamus* to compel the issuance of a writ of assistance, notwithstanding the remedies of appeal, ejectment, and unlawful detainer.

[11] ID.—HARVESTING OF CROPS—RETENTION OF POSSESSION—LESSEES WITHOUT RIGHT. — Lessees of mortgaged premises are not entitled to retain possession as against the purchaser at the foreclosure sale for the purpose of cultivating and harvesting crops planted during the running of the period of redemption, where the lease was subject to the mortgage and they were parties to the foreclosure action.

[12] ID.—EMBLEMENTS—RIGHT OF TENANT—COMMON-LAW RULE INAPPLICABLE.—The common-law rule of the right of the tenant to emblements after the termination of the lease does not apply to an estate in lands terminated by foreclosure.

[13] ID. — HARDSHIP IN REMOVAL OF LIVESTOCK — INSUFFICIENT GROUND FOR POSTPONEMENT OF POSSESSION OF PURCHASER.—The

6.   Issuance of writs of assistance, notes, 51 **Am. Dec.** 152; 93 **Am. St. Rep.** 154; Ann. Cas. 1913D, 1120.

right of the purchaser at a foreclosure sale to possession on re-
ceipt of the commissioner's deed may not be postponed by the
hardship to the lessees incident to the removal of livestock from
the premises at the particular time.

APPLICATION for a Writ of Mandamus to require the
issuance and execution of a writ of assistance. Writ
granted.

The facts are stated in the opinion of the court.

Mannon & Mannon and Cushing & Cushing for Petitioner,

John W. Preston for Respondents.

SLOANE, J.—This is an application for a writ of man-
date and prohibition against the judge of the superior court,
county clerk, and sheriff of the county of Mendocino to
secure the petitioner in the execution of a writ of assistance
to place him in possession of certain real property which
he claims under a commissioner's deed in a sale under fore-
closure of mortgage.

All of the facts preliminary to a consideration of peti-
tioner's rights in the premises are determined by the decree
in foreclosure.

This decree was obtained in proceedings duly had giving
the court jurisdiction of the persons of the defendants and
subject matter of the action in the case of First Federal
Trust Company, a Corporation, as Plaintiff, v. Leslie B.
McMurtry, Alice A. McMurtry, Mortgagors, B. P. Noonan
and Standard Livestock Company, holding a leasehold
interest in the premises, subject to plaintiff's mortgage, and
other defendants holding liens against the premises, subse-
quent to and subject to the plaintiff's mortgage and to
said leasehold interest. It is the rights of the purchaser at
foreclosure sale, under the decree, as against the lessees that
are here involved. It was adjudged and determined by the
decree that the plaintiff was the owner and holder of a first
mortgage lien on the lands in question, upon which there
was due, owing, and unpaid the sum of $94,516, and that
"each and every right, title, interest, and claim of every
kind of each and all of the defendants herein and of each
and all of the cross-complainants herein" are subsequent
and subordinate to the plaintiff's mortgage.

Also, that the certain lease referred to in said answer of said defendants B. P. Noonan, Standard Livestock Company, a corporation, et al., "is now in full force and effect as to the unexpired term thereof, and that said Standard Livestock Company is now the owner and holder thereof"; also, that said lease was "and it is hereby adjudged and decreed to be subsequent and subordinate to all said rights, claims, and liens of said plaintiff," and that said lease is "prior and superior to any and all claims of liens" of the other defendants and cross-complainants, as parties claiming under them, and that all and every right and interest of the other defendants and cross-complainants "are subsequent and subordinate to the rights of said defendant Standard Livestock Company under said lease, as successor in interest of the defendant, B. P. Noonan, the lessee therein named."

It was then found and decreed that other defendants and cross-complainants, whose names and interest it is not necessary to set out here, were owners and holders of subsequent and subordinate liens on the mortgaged premises in varying amounts aggregating about the sum of sixty-four thousand dollars. The amounts of these subsequent liens were ascertained and determined and all declared subordinate to the lien of plaintiff and to the leasehold of the Standard Livestock Company.

The decree then ordered and adjudged that a sale be made by a commissioner named for that purpose of all the mortgaged premises in one parcel in the manner provided by law "free and clear of any and all liens and claims of each and all of the defendants herein, and of each and all of the cross-complainants herein, and of any and all other persons and corporations."

It was next directed that the proceeds of such sale be applied first to the payment of the amounts due the plaintiff aggregating the sum of $94,546, and that the balance, if any, be applied in the order of their preference to the subsequent lien claims.

No provision was made by this decree to protect the leasehold of the Standard Livestock Company, or for the application of any of the proceeds of the sale to its interest in the premises. The decree, however, directs if there remain any balance after applying the proceeds as therein

specifically directed, the same "be returned into court to abide the further order thereof."

It is finally provided by the decree that the purchaser at said sale be let into possession of the premises, "and that in case such purchaser or purchasers shall be refused such possession, a writ or writs of assistance issue without further notice, requiring the sheriff· of the county in which said lands are situated to place and maintain each of said respective purchasers in the quiet and peaccable possession of the lands and premises so foreclosed by him and the whole thereof."

The sale was made pursuant to said decree, at which sale the petitioner, W. H. Sullivan, bid in the entire mortgaged property at the sum of $152,825, and in due course, no redemption having been made, received the commissioner's deed to the premises. The purchaser was not a party to the foreclosure suit nor in any manner connected therewith. At the time the commissioner's deed was delivered the said B. P. Noonan and Standard Livestock Company were in possession of the premises, claiming by virtue of their lease. Demand was made upon them and the commissioner's deed was exhibited to them, but they refused to surrender possession. Petitioner then applied to the superior court in which the decree was given that a writ of assistance be issued in accordance with the terms of the decree of foreclosure and sale. Such writ was thereupon ordered and was issued, directed to the sheriff of Mendocino County, requiring him to put the purchaser in possession. Before the sheriff had executed the writ the lessees, Noonan and Standard Livestock Company, applied to and obtained from the court an order restraining the sheriff from executing the writ, and served notice of motion to amend the writ by providing that the purchaser be placed in possession of the premises "subject, however, to the lease of Standard Livestock Company, a corporation."

It is to these proceedings withholding and amending the writ of assistance that the petition before us for writ of mandate and prohibition is directed. It is claimed by petitioner, the purchaser at the foreclosure sale, that the court or judge thereof was without jurisdiction to withdraw or modify the original order and writ of assistance issued in accordance with the terms of the foreclosure decree.

[1] It seems to us that the main issue in this proceeding, namely, the right of the purchaser at this sale to possession of the entire interest and estate in these premises on receipt of his deed, freed from the leasehold or other subsequent interests, is not open to dispute. The decree was allowed to become final without appeal, motion for new trial, or other attempt to avoid or modify it. The owners of the leasehold were parties to the action. Their interest was declared subject and subordinate to plaintiff's mortgage. The entire interests covered by the mortgage and lease were subject to sale and ordered sold and foreclosed in satisfaction of plaintiff's claim. [2] No provision was made for making this sale subject to the leasehold interest, and the court could no more have subordinated the rights of plaintiff to that of the lessees in making this sale than it could to the rights of the subordinate lienholders under subsequent mortgages. Each, in the order of preference of his claim, was entitled to redeem but no redemption was made. [3] As to all lien claimants other than the plaintiff, the leasehold was decreed to be prior and superior, and the lessees should have been entitled to take precedence to these in the distribution of the surplus proceeds of the sale after plaintiff's demand had been satisfied.

But whatever the power of the court or the rights of the lessees by way of protection of this leasehold, they were not exercised, and under the decree and order of sale the entire estate in the mortgaged premises was offered for sale and bid in by the purchaser, a stranger to the action, and he received under his purchase and the subsequent deed of the commissioner an unqualified and unlimited title to the entire tract.

The court did not exceed its jurisdiction in decreeing this sale, and it is too late now to go behind its judgment because of any errors or irregularities.

It is no answer at this time to the conclusiveness of this decree and the proceedings under it that the trial judge had intended the decree to safeguard the interests of the lessees, and that the failure to do so was one of mistake or inadvertence.

[4] The status of the holders of the lease was in no way strengthened by the fact that they bid at the commissioner's sale an amount sufficient to meet the demand

of plaintiff's prior lien. The decree included other liens to be satisfied from the proceeds of this sale and it was the duty of the commissioner to sell to the highest bidder. The bid of the lessees was not the highest bid, and was ineffective for any purpose. Petitioner's rights as a purchaser were only subject to the right of the various parties in interest to redeem.

[5] The writ of assistance as originally issued was properly granted, and only directs the execution of the decree according to its terms. It is provided by the terms of the decree itself that upon the execution of the commissioner's deed the purchaser be let into possession of the premises, "and that in case such purchaser or purchasers shall be refused such possession, a writ of assistance issue without further notice requiring the sheriff of the county in which such lands are situated to place and maintain each of said respective purchasers in the quiet and peaceable possession of the lands and premises so purchased by him and the whole thereof." Whether or not this provision for the issuance of a writ of assistance without further notice would bar the right of a stranger to the action coming into possession of the premises from requiring notice of an application for such writ, we see no reason why it should not be conclusive against the parties in possession who were parties to the action. [6] While it is true that a writ of assistance will not ordinarily issue without notice to the person in possession, the reason for such rule surely cannot apply where the waiver of such notice has been determined as between the parties by the decree. (*Sichler* v. *Look*, 93 Cal. 600, [29 Pac. 220]; *Montgomery* v. *Tutt*, 11 Cal. 190.)

[7] Even where an *ex parte* order without notice has been made, it should not be set aside by the court making the order unless there is a showing that it was improvidently or improperly made. (*Klokke Inv. Co.* v. *Superior Court*, 39 Cal. App. 717, 720, [179 Pac. 728]; *Wiggin* v. *Superior Court*, 68 Cal. 398, [9 Pac. 646].) It is very apparent in this case that the attempted vacation or amendment of the writ of assistance as originally issued was solely for the purpose of modifying its terms so as to make the possession of the purchaser "subject to the lease of the Standard Livestock Company," as is set out in the order

of the court recalling such writ. This the court had no power to do. Such a limitation upon the possession of the purchaser at the sale would be an attempt to modify and restrict the right established by the decree.

It requires no citation of authorities to show that petitioner's rights under the judgment and foreclosure sale and conveyance cannot be circumscribed in this way.

We are satisfied that petitioner is entitled to possession of the premises freed from the claims of this lease.

No judgment of court in ejectment or unlawful detainer could give him any clearer right to possession than he has under this judgment and sale. This is not a case where the rights of parties in possession who are not bound by the record in the foreclosure action are involved, and where an independent title or right of possession is claimed. Here the rights of the contenders for possession have been fully adjudicated and it only remains to put the plain provisions of such adjudication into execution. [8] A writ of assistance under such conditions is a matter of right. [9] The province of a writ of assistance is to give effect to the decree, and should only be withheld where it appears that the rights of the parties have been changed by some subsequent agreement or event (*City of San Jose* v. *Fulton*, 45 Cal. 316). In this case there is no claim that there has been any change or modification of the right to possession arising under the terms of the decree.

[10] It is strongly urged by respondents that the petitioner cannot resort to *mandamus* to compel or restrain the action of the trial court in this matter; that a plain, speedy, and adequate remedy is afforded either by appeal or by an action in ejectment, or for unlawful detainer.

It is true that all of these modes of obtaining relief are open to him, but it may well be questioned under the circumstances of this case, if either of them is plain, speedy, or adequate. Where, as here, the judgment has become final, and the only question in controversy is the right to enforce such judgment in accordance with its terms, it certainly is a roundabout and inadequate remedy to compel the party seeking enforcement of his decree to prosecute an independent action, when equity provides a direct procedure in the original action for carrying out the decree. Generally, it may be conceded, relief from orders granting or denying

writs of assistance is sought by appeal. Such is obviously the proper remedy where issues of fact are involved raising a controversy as to rights acquired subsequent to the judgment. But here the successful prosecution of an appeal would bring the petitioner back to precisely where he now is, his right to possession under the same decree, and to obtain it through a writ of assistance. A subsequent order for or against the issuance of such writ would be subject to another appeal, and so on *ad infinitum.*

The question as to whether *mandamus* will lie in the face of a right of appeal upon orders affecting the issuance of writs of assistance has not been directly before the appellate courts of this state. The most that appears from California decisions cited by respondent is that the aggrieved party has always resorted to his remedy by appeal. It was held in *State ex rel. Biddle* v. *Superior Court*, 63 Wash. 312, [Ann. Cas. 1913D, 1119, 115 Pac. 307], that an appeal furnished a plain, speedy, and adequate remedy, but there, as in most of the cases where an appeal has been taken in this state, issues of fact extraneous to the record in the original action were presented which could not be adequately presented without a transcript of the evidence. In other words, where the right to the issuance of the writ appears on the record and there is no new obligation or extraneous facts giving rise to equities in favor of the respondent there would appear no good reason for denying the petitioner the right to summary relief. We think the case of *Holtum* v. *Greif*, 144 Cal. 521, [78 Pac. 11], is substantially in point here. It is true that *mandamus* was sought in that case to compel the issuance of a writ of execution and not a writ of assistance, and that a writ of execution issues as a matter of right, and not of discretion of the court or judge. But if in the matter before us the facts as disclosed by the petition and answer are such as to take the issuance of the writ of assistance without the discretion of the court the duty to grant and enforce the writ is as mandatory as in the case of an execution in an action at law.

In the decision last cited a writ of mandate to compel issuance of an execution was upheld, notwithstanding an appeal would lie. The court, in the opinion by Chief Justice Beatty, says: "Here it is suggested there is a plain, speedy, and adequate remedy by appeal from the order overruling

the motion for execution, but this remedy, although plain, is neither speedy nor adequate. The appeal, in the ordinary course, would not be decided for a long time, and pending the appeal there would be no security for the payment of the judgment. And, besides, nothing would necessarily result from an appeal beyond a reversal of the order, and this would merely confirm the right of the petitioner to execution—a right already complete. So that unless the judgment of reversal was accomplished by a mandatory direction to order the issuance of execution, the petitioner would find himself at the end of his appeal precisely where he is now—with a right to demand the issuance of the writ, but with no power to compel it.'' The language quoted seems to us to be exactly applicable to the instant case.

If respondents' contention could be maintained under the facts pleaded in the answer to the petition, that issues are presented giving rise to equities which have arisen since the decree in foreclosure, there would be force in the objection to a summary disposal of the matter on this hearing, but we do not think any equities that the court could take cognizance of are pleaded. [11] True, respondents' claim a right to retain possession of the premises for the purpose of cultivating and harvesting the crops it planted pending the running of the period of redemption. The theory advanced is that the termination of the leasehold became uncertain by reason of the duty of the landlord to protect the lease by a redemption from the foreclosure sale. Such a presumption might be indulged as against the landlord mortgagor, but it cannot be maintained as against the purchaser under the foreclosure. The respondents holding under this lease had notice that all their rights would be terminated and cut off at the expiration of one year from the issuance of the certificate of sale, November 8, 1919, unless they or their landlord redeemed. That date fixed the termination of their leasehold as definitely as if it had been so written in the lease. They had an option to redeem. This could prove no more effective to extend their time than an option to renew their lease. Neither would have any force unless exercised within the time limited. The purchaser cannot be prejudiced by any laches on the part of the lessor in failing to protect his tenants for which the purchaser was in no way responsible. After the certificates

of purchase had been issued the lessees planted and cultivated, for a harvest that would mature more than a year in the future, at their peril. The deed in this case was executed in November, 1920. If we may rely upon common knowledge and observation, it would suggest itself that all crops indigenous to the section of the country where this land is situated grown from the preceding cropping season would already have been harvested.

[12] The common-law rule of the right of the tenant to emblements after the termination of the lease does not apply to an estate in lands thus definitely cut off and terminated by foreclosure.

The only decision cited by respondent which appeals to us as being at all in point on this proposition is that of *Monday* v. *O'Neil*, 44 Neb. 724, [48 Am. St. Rep. 760, 63 N. W. 32], but in that case the crops were planted before the foreclosure sale. The court says: "O'Neil knew, of course, that a sale might be made and confirmed before his crop would mature, but he could not know that such would be the case." Here, the sale was completed and the only contingency that could stay the termination of the leasehold within the year was the exercise by the tenant or his landlord of the right of redemption, a matter entirely beyond the control of the purchaser, and for the failure in which there seems no good reason in law or in equity why his estate in the land should be deferred.

[13] The hardship incident to moving respondents' livestock from the premises at the particular time when their right of possession terminated is a matter which may not postpone petitioner's right of entry. In the varied and extensive population of a large stock ranch with cattle, swine, and sheep, if the time of removal should be adjusted to meet the periods of maternity of all the animals, it would prove difficult to find an entirely convenient season.

We recognize the unfortunate situation in which the respondents have been placed under this foreclosure decree and sale, but it is too late to afford them any relief by modifying the effects of the judgment.

Under the facts as they appear on the face of the record it is our conclusion that the writ of assistance was not improvidently or inadvertently issued, and that the court is without power to amend it so as to subject petitioner's pos-

session of the premises to the lease of the respondents, or to further withhold its execution.

Let a peremptory writ of *mandamus* issue requiring the issuance and execution of a writ of assistance in accord with the terms of the decree of foreclosure and sale, and providing that the purchaser at the foreclosure sale be placed in absolute possession of the premises as against all of the defendants in said action and all parties claiming under such defendants, or any of them.

Wilbur, J., Olney, J., Shaw, J., Angellotti, C. J., Lawlor, J., and Lennon, J., concurred.