[Civ. No. 13948.   Second Dist., Div. Two.   Mar. 29, 1943.]

KIER CORPORATION (a Corporation), Plaintiff and Appellant v. TREASURE OIL COMPANY (a Corporation) et al., Respondents; IONE ESTES DODD, Intervener and Appellant.

Henry S. Dottenheim, H. A. Andrews, J. M. Danziger and John L. Schaefer Appellants.

E. E. Hitchcock, Henry G. Bodkin and Charles S. Cass for Respondents.

MOORE, P. J.—This action had its genesis in an oil lease executed by the Kier Corporation, hereinafter referred to as Kier. The lease contemplated that other parcels contiguous to the leased lots should be acquired from the owner under a lease similar in form to that given by Kier, that the combined area should be operated as a community lease and that the royalties were to be apportioned according to the areas described in the respective leases. This action was instituted to obtain an accounting of the royalties alleged to have accrued under the Kier lease. Inasmuch as the appeal of Kier is to be dismissed we have now to consider only the appeal of Mrs. Dodd, the intervener.

The question for decision as stated by the intervener who claims as the grantee of Kier is whether a lessee under a community lease is obliged to pay royalties to the lessor or its grantee notwithstanding the leased property has been sold pursuant to foreclosure proceedings of a senior lien. Intervener bases her claim to such royalties upon a covenant of the lease which intervener construes to be a promise of lessee to protect the lessor's royalties in the event of sale under such foreclosure after delivery of the lease.

In June, 1930, one William J. Dodd, of Los Angeles County deceased leaving some estate and his surviving widow Ione Estes Dodd. For brevity hereinafter the widow in her individual capacity will be referred to as intervener; as executrix of the estate of her departed husband she will be referred to as executrix. Following the death of Mr. Dodd intervener and the Security First National Bank qualified as executors of the estate. The inventory included ten city lots, hereinafter referred to as the Dodd lots, and showed

an appraisement in the sum of $17,950 and that the aggregate amount of the subsisting liens against the property were secured by trust deeds and exceeded $17,000. After joining with executrix in objecting to the appraisement of the lots and averring their value to be not in excess of $5,000, the bank thereafter, in 1933, resigned as co-executor. In the same year executrix procured an order from the probate court to quitclaim the lots to the Title Guarantee and Trust Company, herein referred to as Title Guarantee, trustee under the trust deeds, in full satisfaction of all sums secured by the Dodd trust deeds. On March 2, 1934, pursuant to such order, executrix made her conveyance. In the following January without an order she undertook to convey the Dodd lots to Kier whose powers had been suspended since the preceding May.

With the status of the title as above outlined, and Kier's powers still suspended, on March 7, 1935, Kier executed the lease of the Dodd lots to the Treasure Oil Company, hereinafter referred to as Treasure Oil. In order to comply with the ordinances of Los Angeles requiring a drill site to consist of not less than one acre the Kier lease provided that its lessee should obtain a similar lease upon parcels adjoining the Dodd lots which, with the Dodd lots, should constitute a community lease. Four days later Treasure Oil acquired from one Fletcher a lease on three lots, contiguous to four of the Dodd lots. Their combined area was not less than one acre.

On March 13, 1935, executrix petitioned the probate court for authority to rescind the quitclaim deeds which she had delivered to Title Guarantee. In her petition she advised the court (1) that a notice of rescission had been mailed to Title Guarantee December 11, 1934; (2) that she had already conveyed the lots to Kier; (3) that Kier had agreed to protect the Dodd estate from any deficiency that might become payable on account of the trust deeds theretofore executed by deceased and herself; (4) that the consideration passing from her for the Kier agreement was the interest of the estate in the Dodd lots. Pursuant to her petition the court made an order setting aside the conveyance to Title Guarantee and approving the transfer to Kier. Such order was made on the 28th of March, 1935, and without the notices required

to be published for the sale of real property by an estate.

Following the last mentioned order Title Guarantee as trustee in the trust deeds of Mr. and Mrs. Dodd, declared the notes thereby secured in default following which intervener and executrix made a lease of the Dodd lots to Treasure Oil. Immediately thereafter, Treasure Oil was granted a permit by the city to drill a well on one of the Fletcher lots. The drilling of the well commenced on July 23, 1935, and its operations were suspended on the 22d of the following October for lack of funds to complete the drilling of the well. Evidently fearing the inability of Treasure Oil to make the payment of rentals on the Dodd lots on September 3, 1935, Kier obtained an order for a moratorium as to that property. About the same time Treasure Oil, apparently in need of funds, conveyed all of its leases in trust to Security Title Insurance and Trust Company to secure payment of its note in the sum of $35,000 in favor of Alma Spreckels. Upon such indebtedness, Treasure Oil defaulted and on November 24, 1936, the interest of Treasure Oil in all of its leases was sold at public auction to Mrs. Spreckels, sister of G. de Bretteville, incorporator of Treasure Oil.

Thereafter on January 10, 1936, Treasure Oil quitclaimed the Dodd lots to Kier and contemporaneously Kier by Mrs. Dodd, its president, quitclaimed the same lots to intervener, and the deed was recorded. By virtue of this deed intervener now lays claim to the royalties payable to Kier under its lease to Treasure Oil. Notwithstanding Kier's covenant to hold the Dodd estate harmless as to the indebtedness of Mr. and Mrs. Dodd nothing in fact was ever paid and the trust deeds were foreclosed by the trustee's sale on the 9th of March, 1936. Title Guarantee was the purchaser at the sale.

Pursuant to a judgment obtained by Mrs. Spreckels against Treasure Oil execution was issued and by virtue thereof the Fletcher lots were sold at sheriff's sale December 21, 1936. Mrs. Spreckels became the purchaser. On the following day Treasure Oil quitclaimed all of its interest in the Fletcher lots to Mrs. Spreckels. On the 14th day of January, 1937, Mrs. Spreckels quitclaimed the Fletcher lots to the Treasure Company which had been incorporated on August 3, 1936. In the same month executrix filed her second report in the Dodd estate in which she stated that the encumbrances on the Dodd lots had been foreclosed; that the leases had been

abandoned; and that the estate's four per cent interest in the oil products to be recovered from the lease was of no value. In September, 1939, through Attorney Schaefer she filed her amended second report containing substantially the same facts as those in her second report and it was approved on October 5, 1939.

After thus becoming vested with title to the lease on the Fletcher lots, Treasure Company in April, 1938, obtained a lease on certain other lots contiguous to the Fletcher property from one Robert Burns. Immediately thereafter it contracted with one Scoville and the Adamant Company, strangers to all of the transactions heretofore mentioned whereby it assigned certain interests in the well on the Fletcher property for moneys necessary for the completion of the well. By agreement the Burns and Fletcher leases were combined into a community lease. The well was completed and thereafter produced from and after December 7, 1938. On the 9th of February, 1939, Treasure Oil quitclaimed the Dodd lots to executrix and intervener. In drilling on the Fletcher lot Treasure Company has made use of only one of the Dodd lots which it acquired by lease from Title Guarantee after its purchase of the Dodd property at the foreclosure sale.

The foregoing is a résumé of the facts stipulated by the parties for submission to the trial court. Before considering the questions involved in intervener's attack upon the judgment, it is necessary first to dispose of certain motions appertaining to the appeal.

### The Motions

In order to augment the record and to enlarge the issues intervener filed an extensive motion to have this court make findings. Respondents countered with a similar motion and with a motion to dismiss Kier's appeal. These motions must be first decided.

The transcript in this case was filed in the Supreme Court on the fourth day of October, 1941. Intervener joined with the plaintiff in filing the opening brief on November 26, 1941, and the closing brief on March 28, 1942, on behalf of both parties. Attorneys Andrews and Danziger appeared by such briefs on behalf of Kier while Schaefer signed for intervener.

On the 19th day of September, 1942, Attorney Schaefer caused Mr. Dottenheim to be substituted in the place of

Messrs. Danziger and Andrews. Together they filed a motion (a) to be relieved of the stipulation of facts on which the case was tried; (b) to set aside the stipulation of facts; (c) to vacate the judgment; (d) to take additional evidence under section 956a Code of Civil Procedure pursuant to rule XXXVIII of this court.

In support of his motion, Mr. Schaefer averred that while in the city of New York in October, 1939, he was stricken with a coronary thrombosis; that upon his return to Los Angeles in the following December he was confined to his home for 20 months; that the stipulation was signed on the first of November and the trial thereon was had on the fourth of November; that he took no part in the trial except to converse with Danziger and Andrews; that several drafts of the stipulation were mailed to him; that he made suggestions by telephone and otherwise and called upon counsel at their offices; that a carbon copy of the proposed final draft of the stipulation was submitted for his additions and corrections; that he made such corrections relating to the very facts of which he would now make proof in order to obtain new findings. He declares that he struck out important portions of the proposed final draft which were not in accordance with the facts and inserted entire paragraphs and signed the last sheet before mailing the documents to Danziger and Andrews; that he heard no more and assumed that the document included his corrections.

After declaring his amazement and distress at the omission of his amendments from the stipulation he deplores Danziger's inability to get the Schaefer amendments allowed and is disappointed that Danziger and Andrews would not insist that the controversial points raised by the Schaefer amendments be heard in open court. Because of his opinion that the omission of certain facts from the stipulation leaves it incomplete and because the language of paragraph thirty of the lease, as construed by respondent, creates an ambiguity, he insists that oral testimony concerning the circumstances surrounding the negotiations for the original leases be taken in order to resolve the ambiguity.

Without enlarging further upon the motion and the voluminous affidavits in support thereof it will suffice to observe (1) that Schaefer organized and managed Kier and that he retained Danziger and Andrews to act for Kier in all matters relating to the present action; (2) that the substantial averments of Schaefer are contradicted by Attorneys

Bodkin and Gass and by Mr. G. de Bretteville. In addition thereto, Mr. Bodkin avers (1) that the correspondence between Danziger and Schaefer prior to the submission of the case below shows that Schaefer had been advised as to all proceedings in connection with the preparation of the stipulation, (2) that neither Bodkin nor Gass had refused to stipulate to anything, but had cooperated; (3) that no mention was ever made by Schaefer of his claim that he did not sign the final draft of the stipulation until the oil well had been placed on production after which he demanded that respondent pay Mrs. Dodd a portion of the royalties as a compromise; (4) that neither Schaefer nor his client manifested interest in the fortunes of the Kier leases until the Treasure Company had taken over the property and completed an oil well, almost three years after Treasure Oil had abandoned the property in January, 1936, and the Dodd trust deeds had been foreclosed. During the period following the advent of the Treasure Company in August, 1936, there is no evidence in any of the affidavits that either Mr. Schaefer or his client took any action or did anything to indicate that they expected to participate in the earnings of the well completed on the Fletcher property. There was no redemption from the execution sale made under the Spreckles judgment. Moreover, Schaefer and intervener both knew of Treasure Company's transaction with Scoville and the Adamant Company whereby the latter parties were to receive 44 per cent of the well's production. Of this fact Schaefer was fully informed but never made any claim at any time that intervener or the Kier Corporation had any interest in the well. He caused the present action to be instituted only after the well had been placed on production. Furthermore, Schaefer knew of the Treasure Company's lease from Burns whereby it could complete the drilling of the well and avoid the injunction threatened by Title Guarantee in the event the drill stem should pass into one of the adjoining Dodd lots to which it held the title.

From the foregoing it must appear that it would be inequitable to disturb the record established by the trial court with the cooperation of able counsel representing all parties in that forum. They acted in good faith for intervener as well as for plaintiff and the stipulation will therefore not be disturbed.

Intervener's motion to take testimony as the basis of new findings by this court will be denied. Such findings can

be made by an appellate court only for the purpose of affirming the judgment. (*Kleinsasser* v. *McNamara,* 127 Cal App. 258 [15 P.2d 788]; *Evans* v. *McGranahgan,* 4 Cal.App. 2d 202 [41 P.2d 937].)

The appeal of Kier must be dismissed because the proof on file shows that its powers have long since been suspended and it cannot therefore maintain its action.

It appearing that the new findings are unnecessary in order to determine the rights of respondents to prevail their motion to take evidence and to make additional findings will be denied.

### THE MERITS OF THE APPEAL

(1) In spite of the tangled skein of the probative facts of this case, intervener undertakes to defeat the judgment upon a provision contained in paragraph 30 of the Kier lease. Before quoting the language, however, it will serve the understanding to bear in mind that prior to the date of the lease executrix had once conveyed the lots by quitclaim deed to Title Guarantee, grantee in the Dodd trust deeds, "in full satisfaction of any and all claims." Subsequently she conveyed the property to Kier, her own corporation, which agreed to avoid a deficiency judgment against the estate. After the transfer to Kier and her notice of rescission to Title Guarantee it was but a step to foreclosure under the trust deeds. It was the anticipation of such foreclosure that moved the contracting parties to insert the passage in the lease which reads as follows: "That should oil and/or gas be discovered under this lease or community lease of which this lease may be a part thereof, in paying quantities pending the final sale of said lots under foreclosure of said Deeds of Trust, should said Deeds of Trust be foreclosed after the execution and delivery of this lease, then in that event the lessee hereby agrees to protect the lessor on all of said lots so that said lessor shall not have a deficiency judgment taken against lessor in said foreclosure, and to protect the validity of the within lease and the royalties reserved to the lessor herein; but should no oil and/or gas be discovered in paying quantities on any of said lots, then the lessee is not obligated in any manner to protect the lessor as hereinabove provided, notwithstanding anything to the contrary herein contained; and any and all money paid by the lessee upon said Deed of Trust, or either of them, shall be repaid to lessee out of 50 per cent of the royalty due lessor until lessee is paid in full therefor."

Such provision is nothing more than the personal obligation of the Treasure Oil. By no principle of logic can it affect the Treasure Company which came into being some three years following the execution of the Kier lease. It is not the alter ego of Treasure Oil. Neither by explicit language nor by implication did Treasure Company ever assume the obligation sought to be imposed upon Treasure Oil by the foregoing provision. The language quoted provides that if oil or gas in commercial quantities should be discovered under this lease or the community lease pending the final sale of the Dodd lots at that time subject to forecloseure, then Treasure Oil agrees to protect Kier so that Kier will have to pay no deficiency should the sale bring less than the amount of the Dodd notes. It is an agreement of Treasure Oil to guarantee the continuity of the lease and the royalties reserved to the lessor, should such discovery of oil occur. Such provision was inserted in the lease as a protection to Kier by reason of its contract with the Dodd estate at the time it acquired its deed to the lots from the estate. But nothing contained obligates Treasure Oil to pay royalties in the event of the foreclosure of the trust deeds upon the lots without regard to the completion of a well prior to a foreclosure sale. Had there been such intention in the minds of the parties it would have been stated in unequivocal language in the lease.

But whatever obligation might be construed to arise out of the first clause of the quoted passage it was nullified by the latter part of the paragraph which relieves the lessee from the payment of any sum in the event no oil or gas should be discovered ''in paying quantities on any of said lots.'' In the first place, in order to fasten an obligation upon Treasure Oil it would have been necessary to discover oil in paying quantities while it had title to the Dodd lots. In the second place there is neither proof nor allegation that oil was ever discovered under any of the Dodd lots. Intervener's complaint proceeded upon the theory that Treasure Oil has performed the terms of the lease and is therefore indebted to intervener for the royalties due under the Kier lease from a well drilled thereon by Treasure Oil. She can have no such judgment because there was no production, no well. While she shows that a lease was made to Treasure Oil, she failed to prove that Treasure Oil drilled the well or holds any royalties for the account of intervener. ■ To justify a judgment for royalties, in an action on the lease, it is not sufficient to show that Treasure

Oil breached its agreement to sink a well on the community lease. (*Ericksen* v. *Rhee,* 181 Cal. 562 [185 P. 847].) "Allegata and probata must correspond."

Moreover, the agreement to pay royalties was the personal covenant of Treasure Oil. It was not a covenant running with the land and it did not require another who might subsequently lease adjacent property to pay such royalties. The covenant in the Kier lease was that Treasure Oil should pay a sum equal to one-sixth of the market price of oil produced and sold by it from the Dodd lots. Intervener, as successor in ownership of the lots cannot recover the royalties from Treasure Oil because that corporation had lost title to the lots, as will presently appear, before Kier quitclaimed to her. Furthermore, she is without right against the Treasure Company, an independent corporation of a later vintage, which is described in intervener's complaint as the "successor in interest" of Treasure Oil. There was no proof that Treasure Company did succeed to such interest from Treasure Oil as grantor. Neither is there allegation or proof that Treasure Company ever assumed the obligation to pay the royalties promised by Treasure Oil or any other debt of the latter corporation. In the absence of such allegation recovery could not be had against Treasure Company, even though the action had sounded in damages for a breach of the lease and adequate proof thereof been received. It follows that intervener must fail both on account of the absence of necessary allegations as well as by reason of the failure of her proof with reference to the payment of royalties.

(2) Intervener is utterly without right of recovery by virtue of the fact that the lots had been conveyed to Title Guarantee by executrix in March, 1934, and to make assurance doubly sure the senior liens upon the Dodd lots were foreclosed at trustee's sale on March 9, 1936. The trust deeds had been executed by Mr. and Mrs. Dodd in October, 1929. At the sale the trustee, to wit Title Guarantee, purchased the lots and was thenceforth as owner of the fee entitled to the oil beneath them and to all royalties to be earned by the land. (*Fahrenbaker* v. *E. Clemens Horst Co.,* 209 Cal. 7 [284 P. 905]; *Sullivan* v. *Superior Court,* 185 Cal. 133 [195 P. 1061]; *White* v. *McVey,* 168 Okla. 19 [31 P.2d 850, 94 A.L.R. 656]; *Callahan* v. *Martin,* 3 Cal.2d 110 [43 P.2d 788, 101 A.L.R. 871]; *McIntire* v. *Bond,* 227 Ky. 607 [13 S.W.2d 772, 64 A.L.R. 630]; *Lever* v. *Smith,* 30 Cal.App.2d 667 [87 P.2d 66].) If the royal-

ties earned are "rent" or "an incorporeal hereditament, issuing from the profits of land," surely they would follow the owners of the fee and payment thereof to another would be a conversion. If the royalty due the land owner follows the fee, then the foreclosure of the Dodd trust deeds vested in Title Guarantee all royalties for oil taken from the Dodd property.

(3) Had there been no foreclosure on the Dodd lots, intervener would have been unable to recover for the reason that the Kier lease was ineffectual to vest the title of the property in Treasure Oil. This results from the interrelationship of the following facts heretofore outlined: In October, 1933, the probate court authorized executrix to quitclaim the lots to the Title Guarantee in full satisfaction of its claims and liens upon the lots. Pursuant thereto, on May 2, 1934, she made such conveyance. The Title Guarantee having thus obtained title in October, 1934, it was impossible, by virtue of the actual occurrences, for Kier to gain a title prior to its lease to Treasure Oil on March 7, 1935. Intervener's attempt to prove title successively in herself and in Kier arises out of a novel bit of logic whereby intervener asserts that on December 11, 1934, she gave a notice to Title Guarantee of her rescission of her quitclaim of December 11, 1934, to Title Guarantee and that, consequently she thereby restored the title to the lots in herself. A notice of rescission alone does not serve to annul a conveyance merely by means of a delivery of such notice (*Fairbairn* v. *Eaton,* 6 Cal.App.2d 264 [43 P.2d 1113].) Unless a rescission be effected by mutual agreement the party who deems himself aggrieved must accompany his prompt demand with an offer to restore whatever of value he has received from his adversary. Failing thereby to effect his rescission, he must seek judicial process to enforce his demand. (Section 1691, Civil Code.) The reluctant response of the wrongdoer to the demand for rescission may impel the victim of chicane or mistake to invoke the aid of equity to restore him to his quondam status (*Fairbairn* v. *Eaton, supra.*) Not only did executrix fail to regain title by her notice of rescission, but failing to have her right to rescission favorably adjudicated, in order for her to regain title to the lots from Title Guarantee, it would have been necessary for the latter corporation to execute a conveyance in legal form and to make delivery thereof with the intention of revesting executrix with the title. Even had she regained possession of her own unrecorded deed from the grantee, such repossession would not

have been sufficient to restore title to her. (*Estate of Bruck,* 140 Cal.App. 300, 308 [35 P.2d 431].) It follows that, since she had no title, her act of January 28, 1935, purporting to convey the Dodd lots to Kier was abortive. ▉ Indeed, for another good reason, her deed to Kier was a nullity because it had not been authorized by the probate court. (Section 755, Probate Code.)

▉ Furthermore, the order of the court on the 28th of the following March pretending to confirm intervener's deed of January 28, 1935, was ineffectual for vesting the title in Kier because (1) such an order of the probate court was powerless to divest Title Guarantee of its title; (2) the order of March 28 could not reanimate executrix' void deed to Kier (*Estate of Delaney,* 49 Cal. 76) ; and (3) the order authorizing the conveyance to Kier was void. ▉ To make valid a sale of the realty of an estate, the sale must be reported by verified petition to the court within 30 days after the sale and, after notice by the clerk, it must be confirmed by the court (Section 755 *supra; Lass* v. *Eliassen,* 94 Cal.App. 175 [270 P. 745].) In the absence of notice of a hearing on the petition the order of confirmation is void. (*Texas Co.* v. *Bank of America etc.,* 5 Cal.2d 35 [53 P.2d 127].) ▉ Therefore, inasmuch as Kier had no title to the lots on March 7, 1935, its lease to Treasure Oil was a nullity.

Not only were the Dodd lots acquired by Title Guarantee in March, 1936, but the interest of Treasure Oil in the property as well as its interest in the Fletcher lots, was conveyed in trust on August 31, 1935, to secure a loan of Alma Spreckels in the sum of $35,000. In the subsequent November she foreclosed her lien and purchased at the sale the land covered by her trust deed, including the Fletcher lot on which the well had been drilled. In the meanwhile Treasure Company having entered the arena, Mrs. Spreckels conveyed the Fletcher lot to that corporation. It resumed drilling operations and completed the well on December 7, 1938. From the foregoing it is seen that Treasure Oil was completely divested of title to the Dodd lots after Mrs. Spreckels had foreclosed and Treasure Company entered upon the premises.

▉ (4) Intervener contends that Treasure Oil as lessee of Kier cannot question the title of its lessor. It is trite that one who enters lands under a lease cannot retain possession and appropriate its benefits and still question the title

of his landlord. But no such situation exists here. So far as the lease of Kier to Treasure Oil was concerned, the Dodd lots ceased to be, just as if they had sunk into a flaming chasm, when they passed into the ownership of Title Guarantee. Lessee's rights under the lease having been thus erased, is it possible that Kier or its successor could require the payment of royalties for the use of the property after the change of ownership? In response to intervener's contention that the ownership of the fee is immaterial to her right of recovery, it is clear to us that since neither Kier nor intervener could have restored Treasure Oil to possession after the ownership shifted to Title Guarantee, it is now appropriate for the erstwhile lessee to denounce the asserted ownership of Kier in March, 1935, or at any time thereafter as a basis for collecting royalties for the use of the property after both parties had been ousted. (*Oneto* v. *Restano*, 89 Cal. 63, 68 [26 P. 788].) We have shown that Kier had acquired no title to the Dodd lots for two reasons: (1) Executrix had not procured an order authorizing the conveyance to Kier. ▆ Since the grantee of an executor is not required to know of the irregularities in the estate's proceedings, such grantee acquires nothing by such conveyance when executed without the court's previous authorization. (*Texas Co.* v. *Bank of America*, 5 Cal.2d 35, 38 [53 P.2d 127].) (2) The fee was vested in Title Guarantee on the date of the Kier lease. ▆ Under such conditions we cannot agree that by virtue of the Kier lease Treasure Oil, had it continued in possession under the new ownership, could have become obligated to pay Kier and its successors royalties on oil products saved from the Fletcher property. Neither is it unorthodox for Treasure Oil to show the nullity of the Kier title at the time of the lease.

So far as Treasure Company is concerned it never contracted any obligation with Kier or executrix or intervener. ▆ (5) Inasmuch as intervener advisedly makes no claim based upon executrix' lease to Treasure Oil in May, 1935, the foregoing discussion disposes of the other contentions of intervener. But finally it is to be observed that the parties to a contract are privileged to include any legal condition subsequent or precedent in their contract. This was done at the time of drafting the Kier lease in providing for the discovery of oil before the lessee should be obligated to pay royalties for the use of the land. Intervener therefore could not enforce the payment of such royalties unless the prescribed

condition had obtained or been waived by Treasure Oil (*Lucy v. Lucy*, 22 Cal.App.2d 629, 632 [71 P.2d 949]; *Warman Steel C. Co. v. Redondo Beach Chamber of Commerce*, 34 Cal. App. 37 [166 P. 856].) Since neither happened, she has no right of recovery against the lessee. She had no contract at all with Treasure Company.

It is therefore ordered that the motion of the intervener to be relieved of the stipulation of facts, to vacate the judgement, and to take additional evidence be and the same is hereby denied; also that the motion of respondents to take evidence and to have additional findings by this court be and is likewise denied.

It is ordered that the appeal of Kier Corporation be and it is hereby dismissed.

It is ordered that the judgment be and it is hereby affirmed.

Wood (W. J.), J., and McComb, J., concurred.