[Civ. No. 24140.   Second Dist., Div. Three.   Aug. 19, 1960.]

MANUEL ARECHIGA et al., Appellants, v. HOUSING AUTHORITY OF THE CITY OF LOS ANGELES et al., Respondents.

Phill Silver for Appellants.

James J. Arditto, Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Milton N. Sherman, Deputy City Attorney, for Respondents.

FORD, J.—This is an appeal from the judgment entered after the general demurrer of each defendant to the complaint had been sustained without leave to amend.

In their complaint against The Housing Authority of the City of Los Angeles and the city of Los Angeles which was filed on May 21, 1959, the plaintiffs alleged in their first cause of action: 1. Prior to the occurrence hereinafter set forth, the plaintiffs were the owners in fee of certain real property in the city of Los Angeles. 2. On February 20, 1953, an interlocutory judgment of condemnation was rendered by the superior court in an action brought by the Housing Authority against the Arechigas, the plaintiffs in the present case. It was therein adjudged and decreed that the Housing Authority "do have and acquire the fee title to said parcel of land . . . for public purposes, namely: (1) for use as a site for a low rental housing project. . . ." 3. On or about March 13, 1953, the Housing Authority deposited in court the amount of the award for the property and applied for and on March 16, 1953, obtained a final order of condemnation which was entered on March 19, 1953. 4. No appeal was taken by the Arechigas from such interlocutory judgment, notice of entry of which was served on them on March 5, 1953, and that judgment became final on or about May 5, 1953. 5. The Arechigas have refused to accept the monies which were deposited in court as aforesaid and such monies are still in the possession of the clerk of the superior court. 6. After the rendition of the judgment, the Arechigas instituted an action in equity to vacate and set aside that judgment upon the sole ground that after the rendition thereof the Housing Authority had entered into an agreement with the city of Los Angeles wherein the proposed construction of a housing project had been cancelled and abandoned. 7. In the action last-mentioned, a judgment was entered in favor of the Housing Authority and the city of Los Angeles after a demurrer to the complaint had been sustained without leave to amend and that judgment was affirmed on appeal. In its opinion on that appeal (reported at 159 Cal.App.2d 657 [324 P.2d 973]), the District Court of Appeal said: "Plaintiffs make no claim of fraud, collusion, bad faith or other misconduct on the part of any governmental agency involved in this case, and make no effort to state any of the traditional grounds of equitable relief from judgment." 8. In the present action, the Arechigas, as plaintiffs, seek to set aside the judgment in eminent domain, which judgment has been assigned

to the city of Los Angeles by the Housing Authority, upon the ground that that judgment was procured by extrinsic fraud practiced upon the court, "to wit, the suppression of material facts from the Superior Court by the representatives of the Housing Authority before said judgment became final and at the time a writ of possession was thereafter issued out of said Court. That the suppression of said facts from the Court violated the due process clause of the Fourteenth Amendment to the United States Constitution in that before the judgment became final . . . , the Housing Authority had been placed on notice that at the request of the City of Los Angeles a Bill had been presented and introduced in the Congress of the United States with the approval of the Public Housing Administration, the legal effect of which was to permit the City of Los Angeles to terminate the public housing project in Chavez Ravine, which included the land owned by the plaintiffs."

9. "That by reason of the suppression and concealment of said facts from the Superior Court, plaintiffs were prevented from presenting a defense to the action in condemnation brought by the Housing Authority upon the merits, and said Housing Authority obtained a judgment which it was not entitled to obtain. That by reason of the suppression and concealment of these facts from the Court, there has not been a *fair* adversary proceeding in said action, and plaintiffs have thereby sustained irreparable injury in the loss of their land and dwelling house. . . ." 10. The facts upon which the present action is based were first discovered by the plaintiffs on or about March 16, 1959. 11. On May 5, 1953, and for a long time prior thereto, the Housing Authority and the city of Los Angeles "were fully informed and knew that the said land would not be required by the Housing Authority for public use as a site for the construction of a low rental public housing project." 12. On February 28, 1953, at the time the Housing Authority presented to the trial judge for his signature the interlocutory decree in condemnation, as well as on March 16, 1953, when the proposed final order was presented to the presiding judge for signature, "the Housing Authority then and there knew that the City of Los Angeles was seeking through an act of Congress permission to abandon the public housing project upon the land owned by the plaintiffs." 13. "That both the Housing Authority and the City of Los Angeles, on or prior to May 5, 1953, had notice and knew that three separate bills had been introduced in the Congress of the United States, at

the behest of the City of Los Angeles. The legal effect of each of said bills, if passed, would have been to authorize the Housing Authority to eliminate the land of the plaintiffs herein, among other land, from the contemplated public housing project. The first of said bills is identified as Public Law 547, and was approved by Congress on or about July 15, 1952. The second of said bills is identified as H. R. 8173, and was introduced in Congress on July 11, 1952, and the substance thereof was incorporated in Public Law 176. The third bill described above is identified as Public Law 176 and was introduced April 6, 1953 and approved by Congress on or about April 22, 1953.'' 14. On July 10, 1953, the Housing Authority applied to the clerk of the superior court for a writ of possession. Such writ was served on the Arechigas on July 11, 1953. At the time the Housing Authority applied for and obtained the writ of possession, ''the Housing Authority then and there had no intention of erecting any type of a housing project upon any part of the plaintiffs' land.''

In the second cause of action, the allegations of the first cause of action were incorporated by reference and, in addition, it was alleged that a controversy had arisen between the parties and the respective contentions were stated. It is not necessary to state here such contentions specifically inasmuch as they will be considered in this opinion in the course of the discussion of the applicable law.

In the third cause of action, the allegations of the first cause of action were incorporated by reference. In addition, it was alleged that: 1. On or about September 30, 1955, the Housing Authority conveyed to the city of Los Angeles the particular parcel of property. 2. The city of Los Angeles was not an innocent purchaser but, ''in truth and in fact, took title to said land full well knowing that in procuring said judgment and in enforcing said judgment, the Housing Authority had withheld from the Superior Court the knowledge that the land . . . was not intended to be used by the Housing Authority for a public housing project, as alleged in the condemnation proceedings.'' 3. On or about May 8, 1959, the city of Los Angeles ''did unlawfully enter upon said land and oust the plaintiffs therefrom, and still unlawfully withholds the possession thereof from the plaintiffs.'' 4. The city of Los Angeles now claims and asserts an interest in the land adverse to that of the plaintiffs but such claim ''is without any right whatever, and the City of Los Angeles does not have any

lawful estate, legal right, title or interest whatsoever in or to said land or any part thereof against these plaintiffs.''

After each defendant had filed a demurrer to the complaint, the court granted permission to the plaintiffs to file an amendment and the demurrers were considered to have been addressed to the complaint as so amended. That amendment embodied a further contention on the part of the plaintiffs with respect to the controversy alleged in the second cause of action as the basis for seeking declaratory relief. It will be hereinafter discussed. A further amendment was also filed by permission of the court and, pursuant to stipulation, the demurrers were deemed to have been directed to the complaint as thus amended. Such further amendment was specifically with respect to the prayer and paragraph VI of the complaint. That paragraph, as changed, was as follows: ''That notice of the entry of the interlocutory judgment was served on the Plaintiffs on March 5, 1953. That no appeal was taken by Plaintiffs from said interlocutory judgment, and said interlocutory judgment never became final in that, the defendants at all times thereafter, failed to deposit into court or to pay to these plaintiffs interest on said judgment as provided for by law.''

At the time of the oral argument, counsel for the appellants stated that ''the court will notice that I haven't attempted to rely upon the first cause of action in this case because of the objections that it might be intrinsic fraud rather than extrinsic fraud.'' Accordingly, we do not find it necessary to discuss the sufficiency of the allegations of the first cause of action.

With respect to the second cause of action, in their opening brief the appellants state that their theory is that the final order of condemnation in the action in eminent domain was prematurely entered and was a void order. One phase of that contention is founded on the fact that the Housing Authority deposited in court on March 13, 1953, the principal sum of the award, which was $10,050, but made no deposit of interest. As is evident from the facts stated above, this deposit was made 21 days after the rendition of the interlocutory judgment of condemnation. Three days later, on March 16, 1953, upon application of the Housing Authority the court made a final order of condemnation. In section 1251 of the Code of Civil Procedure, it is provided in part that: ''The plaintiff must, within thirty days after final judgment, pay the sum of money assessed.'' Section 1252 of that code contains the pro-

vision that such payment "may be made to the defendants entitled thereto, or the money may be deposited in court for the defendants, and be distributed to those entitled thereto." In section 1253 of that code, the next step which is pertinent in the case presently before the court is defined: "When payments have been made . . . as required by the last two sections, the court must make a final order of condemnation, which must describe the property condemned and the purposes of such condemnation."

It is, of course, well established since the determination of the matter by the Supreme Court in 1959 in *Bellflower City School Dist.* v. *Skaggs*, 52 Cal.2d 278 [339 P.2d 848], that the condemnee is entitled to interest from the date upon which the judgment is entered. However, at the time the court made the final order in the present case it could not be said that the law as later stated in the Bellflower case was clearly settled. (See *City of Los Angeles* v. *Aitken*, 32 Cal. App.2d 524, at pp. 534-535 [90 P.2d 377], wherein it was stated that interest was to be paid "from and after the expiration of the thirty days from the entry" of judgment.) It would appear, therefore, that any error on the part of the trial court with respect to the matter of interest was judicial error which was, of course, subject to correction on appeal from the order embodying that determination. (*Cf. Howland* v. *Superior Court*, 127 Cal.App. 695, 698-699 [16 P.2d 318].) Although a final order of condemnation is appealable (*Los Altos School Dist.* v. *Watson*, 133 Cal.App.2d 447 [284 P.2d 513]; see *San Francisco Unified School Dist.* v. *Hong Mow*, 123 Cal.App.2d 668, 670 [267 P.2d 349]), the appellants apparently made no attempt to avail themselves of that remedy. Having failed to avail themselves of that means of redress, they cannot now make a retroactive use of the Bellflower case in an attempt to have the final order vacated or declared to be a nullity.[1] (See 30A Am.Jur., Judgments,

---

[1]While the matter is not directly involved in the determination of this appeal, it should be noted that the condemnee is not without remedy where the full amount of the judgment is not paid. In section 1252 of the Code of Civil Procedure, it is provided in part: "If the money be not so paid or deposited, the defendants may have execution as in civil cases; and if the money cannot be made on execution, the court, upon a showing to that effect, must set aside and annul the entire proceedings, and restore possession of the property to the defendant, if possession has been taken by the plaintiff." A case involving a dispute as to the matter of interest under the judgment is *City of Los Angeles* v. *Aitken, supra*, 32 Cal.App.2d 524. (See also *McPherson* v. *City of Los Angeles*,

§ 710; *Berryhill* v. *United States*, 199 F.2d 217; cf. *Safeway Stores* v. *Coe*, 136 F.2d 771, 773 [78 App.D.C. 19, 148 A.L.R. 782].)

Another phase of the contention that the final order of condemnation was void finds its basis in the claim that such order was prematurely made. Accordingly, we turn our attention to the relationship of the interlocutory judgment and such final order. The judgment, sometimes called the interlocutory judgment, determines the compensation for the taking. (*San Francisco Unified School Dist.* v. *Hong Mow*, supra, 123 Cal.App.2d 668, 670.) As heretofore noted, section 1251 of the Code of Civil Procedure contains the provision that the plaintiff must, within 30 days after *final* judgment, pay the sum of money assessed.[2] Section 1264.7 of the Code of Civil Procedure is as follows: "The term 'judgment' as used in this title means the judgment determining the right to condemn and fixing the amount of compensation to be paid by the plaintiff. The term 'final judgment' as used in this title means such judgment when all possibility of direct attack thereon by way of appeal, motion for a new trial, or motion to vacate the judgment has been exhausted." (See *Southern Public Utility Dist.* v. *Silva*, 47 Cal.2d 163, 165 [301 P.2d 841].)

8 Cal.2d 748 [68 P.2d 707].) With respect to the content of a judgment, it is stated in *Glenn* v. *Rice*, 174 Cal. 269, at page 276 [162 P. 1020]: "In entering a judgment, it is not necessary to declare therein that it shall bear interest. It bears interest at the rate of seven per cent per annum from its date by force of the law and not by reason of any declaration it may contain to that effect." In *Bellflower City School Dist.* v. *Skaggs*, supra, 52 Cal.2d 278, at page 280 [339 P.2d 848], the court said: "Section 22 of article XX of the Constitution provides that rate of interest on any 'judgment rendered in any court of the State shall be 7 per cent per annum.' In *People* v. *Superior Court*, 145 Cal.App.2d 683 [303 P.2d 628], an interlocutory judgment in condemnation was held to be a judgment within the meaning of this constitutional provision. It is implicit in the reasoning of that decision that interest should run from the date that the judgment is entered."

[2]In *People* v. *Superior Court*, 145 Cal.App.2d 683, at pages 687-688 [303 P.2d 628], it is said: "The provisions of section 1251, Code of Civil Procedure, do not affect the finality of the judgment. The effect of its provisions are merely to grant a statutory stay of execution, for upon the expiration of the periods of time fixed by the section the defendant may have execution. (Code Civ. Proc., § 1252; *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 177 Cal. 249, 251 [170 P. 426]; *City of Los Angeles* v. *Aitken*, 32 Cal.App.2d 524, 529 [90 P.2d 377].) The obligation on the part of the condemner to pay the amount of the award is fixed by the judgment and 'is not subject to diminution or modification by the lapse of time,' whether that period of time be the 30-day period or the one-year period mentioned in the section (*Southern Public Utility Dist.* v. *Silva*, supra, at p. 166.) ''

Based upon the code provisions just noted, the appellants urge that "a deposit of the sum assessed prior to the time the interlocutory decree becomes final is premature and does not entitle the condemnor to a final order of condemnation."

But a premature entry of a final order would appear to constitute an error or irregularity rather than an act in excess of the jurisdiction of the court. (See *Vasquez* v. *Vasquez*, 109 Cal.App.2d 280, 283 [240 P.2d 319], and cases therein cited.) It is stated in 1 Freeman on Judgments (5th ed.), section 218, that: "A judgment is said to be irregular whenever it is not entered in accordance with the practice and course of proceeding where it was rendered. The irregularities which have been treated as sufficient to justify the vacations of judgments are very numerous, and it is not possible to prescribe any test by which, in all jurisdictions, to determine whether or not a particular irregularity is such as to require the vacation of a judgment. When the irregularity does not go to the jurisdiction of the court, its action will be largely controlled by the promptness with which the application is made, and by the consideration whether or not the irregularity is one which could have operated to the prejudice of the applicant."

It is difficult to see how the appellants can claim prejudice in the present case. (*Cf. Juneau Spruce Corp.* v. *International L. & W. Union*, 119 Cal.App.2d 144, 146 [259 P.2d 23].) Some reference is made by the appellants to an adverse effect upon their right of appeal arising from a premature entry of the final order, but that argument is not persuasive in the absence of any allegation of an intent to appeal or interference with that right in fact.

Finally, on this phase of the case, we must consider the appellants' attack on the final order of condemnation which is based on the fact that such order was sought and granted without notice to them. In the record in the prior case of *Arechiga* v. *Housing Authority*, 159 Cal.App.2d 657 [324 P.2d 973], of which we take judicial notice (*Christiana* v. *Rose*, 100 Cal.App.2d 46, 52-53 [222 P.2d 891]; *Watson* v. *Los Altos School Dist.*, 149 Cal.App.2d 768, 772 [308 P.2d 872]), we find that in their complaint therein the appellants alleged that they had not withdrawn or accepted the moneys "which they are informed and believe the Housing Authority has deposited with the County Clerk of the County of Los Angeles covering the award made by the court in said judg-

ment.'' That action ''to set aside or enjoin enforcement'' of the judgment in the condemnation action was filed on September 30, 1953, whereas the present action was filed on May 21, 1959. The inference to be drawn is that, long before the present action was instituted, the appellants were aware or, at least, had reason to assume that a final order of condemnation had been made. Since the interlocutory judgment established the rights of the parties, upon which the final order basically rested, the most that the appellants can reasonably urge is that lack of notice of application for the final order constituted an irregularity. (See 60 C.J.S., Motions and Orders, § 15, pp. 16-17; cf. *Sullivan* v. *Superior Court*, 185 Cal. 133, 139-140 [195 P. 1061].) ▉ But, as set forth above, the governing principle is: ''When the irregularity does not go to the jurisdiction of the court, its action will be largely controlled by the promptness with which the application is made, and by the consideration whether or not the irregularity is one which could have operated to the prejudice of the applicant. . . . ▉ While the premature entry of judgment is ground for vacating it, this will only be done where necessary to prevent injury.'' (1 Freeman on Judgments (5th ed.), § 218, pp. 425-426.) ▉ Here both promptness and a showing of prejudice are absent.

The second cause of action was one in which the appellants sought declaratory relief. In view of the matters heretofore discussed, there was clearly no abuse of discretion on the part of the court in the refusal to exercise its power with respect to such remedy. (See *Lord* v. *Garland*, 27 Cal.2d 840, 852 [168 P.2d 5]; *Lavine* v. *Jessup*, 161 Cal.App.2d 59, 69-70 [326 P.2d 238].)

. ▉ By the third cause of action, the appellants sought, in effect, to quiet title to the property involved in the eminent domain proceeding. As set forth in the summary herein of the allegations of that cause of action, the appellants went far beyond a simple statement of a cause of action to quiet title. It was stated in *Lucas* v. *Sweet*, 47 Cal.2d 20, at page 22 [300 P.2d 828]: ''The amended complaint alleges that the plaintiff is the owner in fee simple of the described property, that each defendant claims some interest in the property, that each claim is wrongful and that no defendant has any interest in the property. Allegations such as these are ordinarily sufficient to state a cause of action to quiet title. (*Hyatt* v. *Colkins*, 174 Cal. 580 [163 P. 1007]; *McNeil* v. *Morgan*, 157

Cal. 373 [108 P. 69].) They are insufficient only if the rest of the complaint reveals a defect in the plaintiff's title. (See *Martin* v. *Hall*, 219 Cal. 334 [26 P.2d 288]; *Carlson* v. *Lindauer*, 119 Cal.App.2d 292 [259 P.2d 925].)'' In the present case, it is clear that the allegations which constitute the third cause of action show a judgment and final order in condemnation with respect to the property and fail to show any infirmities therein which would entitle the appellants to a decree quieting title in them or for recovery of the property by them. The demurrer was properly sustained as to this cause of action.

We have not overlooked the contentions of appellants with respect to their rights under the Constitution of the United States and under our state Constitution. ■■■ However, adherence to well-settled principles with respect to the matter of the vacation of judgments does not constitute a violation of the concept of due process. (See *Metropolitan Water Dist.* v. *Adams*, 19 Cal.2d 463, 475-476 [122 P.2d 257]; *Richert* v. *Benson Lumber Co.*, 139 Cal.App. 671, 678 [34 P.2d 840]; *Beistline* v. *City of San Diego*, 256 F.2d 421, 424-425, cert. den. 358 U.S. 865 [79 S.Ct. 96, 3 L.Ed.2d 98].)

Since the attack of the appellants upon the judgment and the final order of condemnation must fail, no claim of prejudicial error can be predicated upon the issuance of the writ of possession. That the city of Los Angeles was entitled to such a writ was determined in *Housing Authority* v. *Lopez*, 159 Cal.App.2d 661 [324 P.2d 976]. (See also *Messenkop* v. *Duffield*, 211 Cal. 222, 226 [294 P. 715].)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 13, 1960.