[Civ. No. 10532.   Third Dist.   July 11, 1963.]

CITY OF NORTH SACRAMENTO, Plaintiff and Respondent, v. CITIZENS UTILITIES COMPANY OF CALIFORNIA, Defendant and Appellant.

180

. Bacigalupi, Elkus & Salinger, Claude N. Rosenberg and William G. Fleckles for Defendant and Appellant.

Raymond McClure, City Attorney, Martin McDonough and McDonough, Holland, Schwartz, Allen & Wahrhaftig for Plaintiff and Respondent.

PIERCE, P. J.—Respondent City of North Sacramento (hereinafter the "city") instituted condemnation proceedings, under the Public Utilities Code (§ 1401 et seq.) to acquire the water system supplying its citizens. This system was owned by appellant, Citizens Utilities Company of California (hereinafter sometimes the "utility"). The proceedings ultimately reached a "final"[1] order of condemnation under which the city was declared to be the owner of, and was granted possession to, the properties condemned, after it had deposited with the clerk of the court the sum of $2,206,000 plus costs. This sum was the amount originally fixed as "just compensation" by the Public Utilities Commission and thereafter included by the superior court in the interlocutory judgment of condemnation.

The question on this appeal from said "final" order of condemnation is whether the trial court erred in issuing said order and in putting the city into possession without exacting, as a condition precedent thereto, payment of 7 per cent interest on the $2,206,000 from the date of said interlocutory judgment (November 5, 1959) to the date when possession was taken. (It was agreed by the parties during oral argument that the question of the allowance of interest on any judgment which may hereafter be made for a possible supplemental award for "betterments" to be made by the com-

[1] "Final" is designated with quotation marks because under the special proceedings involved here the so-called "final" order is not in fact the last adjudication of the trial court in the litigation. Petitions now pending before the commission will result in a further terminal order which *will* be final. This will be discussed hereinafter.

mission hereafter is not before us for decision.) An incidental question is whether a declaration in the order appealed from declaring the city to be the owner of the water system was premature.

In our opinion the trial court ruled correctly on the questions at issue.

The utility's contention is that interest must be added because of the provisions of article XX, section 22, of the California Constitution adopted in 1934 (that provision which relates to interest)[2] and of Code of Civil Procedure section 1255b. The latter section will be discussed below. The constitutional provision provides in part that the rate of interest on any "judgment rendered in any court of the State shall be 7 percent per annum."

Since an interlocutory judgment in a general condemnation proceeding has been held (in *Bellflower City School Dist.* v. *Skaggs,* 52 Cal.2d 278 [339 P.2d 848] and other cases) to be a "judgment" under said constitutional provision, therefore, the utility argues, so must the interlocutory judgment in a *special* proceeding brought under the Public Utilities Code where the property of a public utility is being condemned. We believe that an analysis of the constitutional provision and laws applicable to condemnation proceedings under the Public Utilities Code and the steps here taken under them will demonstrate otherwise. We now undertake this analysis.

In 1956 when, as stated above, the city decided it wanted to acquire the water system owned by appellant utility which served its citizens, two methods of acquisition were available. One method was by general eminent domain proceedings under the provisions of Code of Civil Procedure, part 3, title 7, section 1237 et seq. (See *Citizens Utilities Co.* v. *Superior Court,* 59 Cal.2d 805 [31 Cal.Rptr. 316, 382 P.2d 356].) Under this method, constitutionally-guaranteed "just compensation" is fixed by a jury or by the court if a jury is waived. (Cal. Const., art. I, § 14.) ▇ Respondent city adopted here a second alternative method, to wit: that set forth in the Public Utilities Code, section 1401 et seq.

Under this method a petition by the public agency is made

---

[2] Another article XX, section 22, adopted in 1934 relates to intoxicating liquors.

to the Public Utilities Commission to "fix the just compensation" (Pub. Util. Code, § 1404), the petition is heard (*id.*, § 1409) and just compensation, including severance damages, if any, is fixed (*id.*, § 1411). In the event the condemnee-utility does not accept the amount so fixed, eminent domain proceedings are instituted. (*Id.*, § 1413.) These are not the general proceedings of the Code of Civil Procedure. Just compensation is not fixed by a jury. The finding of the Public Utilities Commission as to compensation is final. The court's initial and primary function is to determine only whether the political subdivision has the right and power to take the property sought to be condemned and if the court determines it does have such right "it shall enter a judgment in favor of the complainant in the action, fixing as the just compensation which shall be paid for the taking of the lands, property, and rights, the just compensation fixed by the commission. . . . The judgment of the court insofar as it refers to the just compensation to be paid for the lands, property, and rights, shall be final and shall not be subject to modification, alteration, reversal, or review by any court except as specified in this chapter." (*Id.*, § 1416.) (See *Citizens Utilities Co.* v. *Superior Court*, *supra*, footnote 3 at p. 809.)

In these proceedings, the Public Utilities Commission made its findings on September 15, 1958, fixing just compensation, including severance damages at $2,206,000. The utility did not accept the sum fixed and a complaint was filed by the city in the superior court on November 6, 1958. A trial was held on the question of the right to condemn and on November 5, 1959, the court entered its interlocutory judgment of condemnation in the sum of $2,206,000. This judgment recites, in compliance with Public Utilities Code, section 1416, that it is "subject to modification by reason of such increase or decrease in the just compensation to be paid as may thereafter be certified to the court by the commission. . . ." This qualifying clause was inserted because, under Public Utilities Code, section 1417, the owner may file a petition for an increase in the award, claiming betterments in the system after the original award. Also the condemner, under said section, is given the right to petition, praying that the just compensation should be decreased by the commission, alleging a loss or destruction by reason of depreciation or deterioration thereof subsequent to the date of the filing of the original

petition. (Pub. Util. Code, § 1417.) (See *Citizens Utilities Co. v. Superior Court, supra,* footnote 3 at p. 809.)

Petitions were filed here by both parties under this section. These petitions are still pending. (Stipulation has been made that the commission's supplementary finding shall be made as of the date when the city took possession of said water system.)

Meanwhile the utility had appealed to this court from the interlocutory judgment. The only question raised on that appeal was the power of the city to condemn the water system, part of which is located outside the city limits. Although, in the trial court, the utility had proposed a finding reciting that the amount of the award was to bear 7 per cent interest and that court had refused to include said provision, it did not urge the trial court's refusal to include interest as a ground for reversal on appeal.

This court affirmed the interlocutory judgment and the Supreme Court denied hearing. (*City of North Sacramento* v. *Citizens Utilities Co.,* 192 Cal.App.2d 482 [13 Cal.Rptr. 538].) The city, after the finality of the interlocutory judgment, adopted a resolution for the sale of its bonds to complete the purchase of the utility's water system.

This resolution by the city was met by the utility's motion in the trial court to stay execution upon the judgment until after just compensation had been fully paid or secured by deposit, including the amount to secure the additional award claimed by the utility for betterment expenditures. Again the issue of interest was not raised in the motion. The trial court denied the motion; and the utility unsuccessfully sought intervention successively by this court, by the California Supreme Court and by the United States Supreme Court. These courts also refused to stay entry of a "final" order of condemnation.

On May 17, 1962, the city sold its bonds, deposited $2,-206,037.75, being the amount of the interlocutory judgment, plus costs and sought and obtained ex parte, a "final" order of condemnation. When the utility refused to surrender possession of the condemned water system under this order, the city obtained a writ of assistance; thus attained and has ever since held possession of the water system which it is now operating to serve its inhabitants. In obtaining the court order and in paying the amount of the interlocutory

judgment it added no interest. The utility's appeal from this order urges the questions stated above.

The utility, although it urges the right to interest as a matter of constitutional guaranty (Cal. Const., art. XX, § 22), does not assert that it was necessarily entitled originally to a straight 7 per cent per annum without deduction. Its reliance is on Code of Civil Procedure, section 1255b (a part of the condemnation law) which as amended in 1961 provides that an interlocutory judgment bears 7 per cent interest, but also provides that when the condemnee remains in possession after judgment, the rents, issues and profits (i.e., the benefits), if any, which he enjoys from the property are offset against the interest award. This was a codification of what had been stated, in *City of Los Angeles* v. *Aitken*, 32 Cal. App.2d 524 [90 P.2d 377], to be the proper rule, the court saying on page 533:

"We believe that the fairest and most equitable course is followed in the foregoing cases, and therefore take the view that while interest should be allowed, notwithstanding the possession of the owner, *the latter is not entitled to both interest and profits resulting from such possession, and such profits may be allowed by way of set-off against the interest, or in reduction thereof.*" (Italics added.)

The utility contends, however, that the burden was upon the city to allege and prove that the utility had received such profits, and since that burden was not met the city has lost the right to the set-off and the utility is now entitled to the full 7 per cent interest amounting to nearly $400,000 on the original award of $2,206,000; (this in addition to the sum of approximately $625,000 claimed as a "betterment" award to be discussed below).

The *Aitken* case (*supra,* at page 533) is authority for the rule that it is the burden of the condemner to show the profits which should be set off. The reason the city did not assume that burden here is its contention that neither the constitutional provision for interest on judgments nor the case law nor the code section (Code Civ. Proc., § 1255b) applicable to *general* condemnation cases covers this special proceeding, that the provision of the Public Utilities Code for the commission's determination of just compensation "by reason of other acts and occurrences, subsequent to" the entry of the interlocutory judgment (Pub. Util. Code, § 1417) is an alternative and substitute provision for the general

law, and that to allow interest on the judgment would be payment of double and "unjust" compensation.

In addition to the above contention the city's first position is that the utility's demand for interest comes too late. It urges that the claim not only could have been, but was, raised before the interlocutory judgment was entered; that the trial court denied the claim and on appeal this court affirmed the judgment, with a hearing denied by the Supreme Court. In fact, says the city, the claim comes twice too late, since, when the utility moved for a stay of execution until *full* just compensation had been paid or a sum deposited to secure it, the demand for interest was not made in the trial court or in the proceedings before either of three appellate courts: this court, the California Supreme Court or the United States Supreme Court.

The utility states no reason and cites no authority showing that it could NOT have had an earlier court determination of the question of its right to interest. ■ The reason for the doctrines covering estoppel by judgment, whether the rule be "law of the case" or "res judicata" is the need for curtailment of prolonged and multiple litigation causing "vexation and expense to the parties and wasted effort and expense in judicial administration." (3 Witkin, Cal. Procedure, p. 1926; *Bernhard* v. *Bank of America*, 19 Cal.2d 807 [122 P.2d 892]; 4 Cal.Jur.2d 593 and cases cited.) Under these circumstances summary disposition of this appeal as requested by the city is a temptation.

The utility, however, makes the counterargument that it was not required to raise the interest issue earlier because (1) where interest is allowable it accrues as a matter of law and need not be expressed in the judgment (*Bellflower City School Dist.* v. *Skaggs*, 52 Cal.2d 278 [339 P.2d 848]; *People* v. *Superior Court*, 145 Cal.App.2d 683 [303 P.2d 628]; *City of Los Angeles* v. *Aitken, supra*); (2) that it comes seasonably if the claim is advanced when the final order of condemnation is sought (*Arechiga* v. *Housing Authority*, 183 Cal.App.2d 835 [7 Cal.Rptr. 338]), and (3) that it was, as stated above, the burden of the city to seek any set-off from the automatically-accruing interest at the rate of 7 per cent per annum. (*City of Los Angeles* v. *Aitken, supra*.)

This argument has force, although it is not, perhaps, as sound as the statement, without discussion, may make it appear. This we do not, in this opinion, decide. We avoid

such decision by dealing on its merits with the question of the right to interest.

Adverted to above is California Constitution article XX, section 22, providing that judgments bear 7 per cent interest, which appellant contends makes the allowance of interest here mandatory. But while an interlocutory judgment in a general proceeding in eminent domain has been held to be a "judgment" under this constitutional provision (in *Bellflower City School Dist.* v. *Skaggs, supra*; *People* v. *Superior Court, supra*; and *City of Los Angeles* v. *Aitken, supra*) no case has ever held the constitutional provision applicable to a special proceeding under the Public Utilities Code which proceeding is *sui generis* and covered by a separate constitutional authorization. (Cal. Const., art. XII, § 23a.)

This latter provision delegates to the Legislature the power to enact legislation conferring upon the Public Utilities Commission "plenary" power and jurisdiction to fix "the just compensation" to be paid for the taking of any property of a public utility in eminent domain proceedings.[3] Declaration that the authority of the Legislature to confer powers upon the Public Utilities Commission is "plenary" is also set forth in California Constitution, article XII, section 22.

The Legislature availed itself of this conferred right in 1913 by amendments to the Public Utilities Act (Stats. 1913, p. 684) empowering the commission, on petition of enumerated public agencies, including municipal corporations, to fix and determine just compensation to be paid for the properties of public utilities in condemnation proceedings. These provisions are now included in the Public Utilities Code, as outlined above.

In *Marin Water & Power Co.* v. *Railroad Com.*, 171 Cal. 706 [154 P. 864, Ann.Cas. 1917C 114], it was stated regarding the constitutional provision (at p. 710): "This, of course, removes all doubt of the present validity of the said

---

[3] Article XII, section 23a provides as follows:

"The Railroad Commission [now Public Utilities Commission] shall have and exercise such power and jurisdiction as shall be conferred upon it by the Legislature to fix the just compensation to be paid for the taking of any property of a public utility in eminent domain proceedings by the State or any county, city and county, incorporated city or town, municipal water district, irrigation district or other public corporation or district, and the right of the Legislature to confer such powers upon the Railroad Commission is hereby declared to be plenary and to be unlimited by any provision of this Constitution. All acts of the Legislature heretofore adopted which are in accordance herewith are hereby confirmed and declared valid."

amendment of section 47 [now Pub. Util. Code, § 1401 et seq.].''

Since the Constitution authorizes the Legislature to confer plenary power upon the Public Utilities Commission to fix the just compensation to be awarded a public utility whose property is being condemned, it must necessarily follow that *if* interest is a part of ''just compensation'' then control over the question of its allowance is a legislative matter unhampered by the constitutional provision that general judgments bear interest. (Cal. Const., art. XX, § 22.)

And it is well settled that interest, when it is allowed in condemnation cases, *is a part of just compensation. (Metropolitan Water Dist.* v. *Adams,* 16 Cal.2d 676 [107 P.2d 618] ; *Heimann* v. *City of Los Angeles,* 30 Cal.2d 746, 758 [185 P.2d 597] ; *City of Los Angeles* v. *Aitken, supra.*) In the latter case the court says (on p. 534) :

''. . . Interest upon the award is not in the nature of 'additional compensation,' . . . On the contrary . . . it is a method devised for the purpose of assuring the condemnee that he will receive the 'just compensation' to which he is entitled under section 14, article I of the Constitution of California. Theoretically, it is designed to place and maintain the condemnee in the same position, at the termination of an appeal, as he was when the judgment was stayed.''

Our task here, therefore, is to determine the legislative intent. Did the Legislature in enacting the Public Utilities Code sections providing a special procedure for the fixing of just compensation by the commission not only originally but to cover ''acts and circumstances subsequent to'' the original petition, intend that something additional should be added—interest-less-benefits—the latter allotment to be made, under Code of Civil Procedure section 1255b, by the court or jury?[4]

In *Aitken, supra,* there is a comprehensive review of au-

---

[4]Code of Civil Procedure, section 1255b does not say when, how or by whom the allotment of interest-less-benefits is to be made. The remainder is a part of ''just compensation'' (see cases, *supra*), and since such allotment is not a mere ministerial computation but involves the taking of testimony to determine what the rents, issues and profits have been, it would seem that in general condemnation proceedings the condemnee has the right to have the amount fixed by a jury under California Constitution article I, section 14. (See *Citizens Utilities Co.* v. *Superior Court, supra,* at p. 816.)

thorities indicating that courts have held divergent views as to whether interest shall be allowed at all before possession is taken and, if so, under what circumstances and from what dates. This indicates considerable flexibility in judicial thinking as to what best assures the award of that compensation which will in fact be just. The court therein states (on p. 532): ". . . the vital question is: What constitutes full compensation?" Our concern here must be to determine what we deem the *legislative* thinking to have been when it framed and adopted Public Utilities Code section 1417 et seq.

We must not lose sight of the goal. The condemnee is entitled to just compensation, no less—but, on the other hand, no more. The city argues that to allow the utility interest here would be to hand it a "windfall." In our analysis of the case, this position is sound and we do not conceive such generosity with a city's money to have been the legislative intent.

Even when the property of a public utility is being condemned under the general condemnation code sections not all of the provisions relating to the fixing of compensation necessarily apply. For example, in a very recent case involving this same utility (but another water system) (*Citizens Utilities Co.* v. *Superior Court, supra*) where the condemning agency elected to proceed under the Code of Civil Procedure rather than under the Public Utilities Code it was contended by the utility that condemnation of public utility property via the general code procedure would be unconstitutional because the provisions of Code of Civil Procedure section 1249 (which provides in part that "For the purpose of assessing compensation and damages the right thereto shall be deemed to have accrued at the date of the issuance of summons and its actual value at that date shall be the measure of compensation") would not permit the jury to allow compensation for betterments necessarily made after commencement of the condemnation. The trial court held, however, and the Supreme Court affirmed (at p. 808 et seq.) that "Code of Civil Procedure section 1249 could not constitutionally be applied and was not intended by the Legislature to apply where, as here, postvaluation date expenditures are made involuntarily under compulsion of law." If section 1249 is not applicable to condemnation of public utility property, then for the same reason neither should Code of Civil Procedure section 1255b be applicable.

This same utility urged in *Citizens Utilities Co.* v. *Superior Court, supra,* that its position is vastly different from that of a private condemnee and the Supreme Court accepted its premise, saying (on p. 811):

". . . A public utility in the nature of a water company is obligated by law to maintain and extend an adequate water service to all users in the district. [Citations] It is required by law, whether or not a condemnation action is pending, that the utility continue to make necessary improvements, additions and betterments to its system."

In the case of the ordinary condemnee whose property is taken under the general eminent domain provisions of the Code of Civil Procedure, the allowance of interest, or of interest-less-benefits, is the only method which the law affords to make whole the owner for the very real loss which the cases (*Bellflower City School Dist.* v. *Skaggs, supra; People* v. *Superior Court, supra; City of Los Angeles* v. *Aitken, supra*) have recognized to be suffered by the owner after judgment and before he is paid and possession is taken.

As said in *People* v. *Superior Court, supra* (at p. 691):

". . . After the entry of the judgment the bank [which was the owner] could not rent or sell the land except subject to the right of petitioner [the condemner] to take it at will; it could not improve it without in effect dedicating the improvement made to petitioner. The result is that payment being delayed, the bank had neither use of the money to which it was entitled nor full use of the property. . . ." (See also *City of Los Angeles* v. *Aitken, supra,* at page 533.)

The position of the owner who is a public utility is, as we have noted above, quite dissimilar. And as regards a utility where, as here, the condemning agency elects to bring Public Utilities Code proceedings, the problem of the period between the interlocutory judgment and the changeover is fully covered by the provisions of sections 1417-1419 discussed above. The procedure set forth in these sections recognizes the inherent difference between the property of a public utility and other property. The utility's property has already been dedicated to use by the public which "'has the right to demand that that service shall be conducted, so long as it is continued, with reasonable efficiency under reasonable charges.'" (*Cudahy Packing Co.* v. *Johnson,* 12 Cal.2d 583, at page 586 [86 P.2d 348].) The public utility is required, as the city observes here, "to preserve, maintain, extend and

expand its system to meet the needs of its customers, notwithstanding the pendency of the condemnation action." But, while suffering these special obligations, *it also enjoys obvious special privileges.* The certificate of public necessity and convenience issued to the established public utility protects it from ruinous wasteful duplicative competition; and it also enjoys a rate basis which, while it does not guarantee it a profit, is designed to give it a fair return, compensating it for the obligations which it has assumed to the public as outlined above.

Section 1417 of the Public Utilities Code provides a method by which the just compensation originally awarded shall be increased by the commission:

". . . [B]y reason of expenditures made by the owner subsequent to the date of the filing of the original petition with the commission, for the purpose of preserving or improving the lands, property, and rights, *or by reason of other acts and occurrences subsequent to that date. . . .*" (Italics added.)

The owner is thus enabled to earn a profit, as though the system were not under condemnation, and to recover compensation for its outlay in keeping its water system currently efficient up to the moment of changeover. Its position, therefore, is not comparable to that of the ordinary condemnee whose tenuous possession during pendency of the eminent domain proceeding has prompted the prescription of interest-less-benefits as the remedy to cure a loss of just compensation.

In *Sacramento Municipal Utility Dist.* v. *Pacific Gas & Elec. Co.,* 72 Cal.App.2d 638, 651 [165 P.2d 741], the court states, with reference to the provision of the act which is now section 1417:

"The part of the act thus referred to *furnishes a complete formula* for the determination and valuation of the betterments and improvements that have been added to the system since the taking of the original inventories." (Italics added.)

To this statement it may be added that the "complete formula" also includes an allowance of increased compensation, not only by reason of expenditures for "preserving or improving the lands, property, and rights," but also *"by reason of other acts and occurrences"* subsequent to the original petition.

The utility has received revenues during the entire period until the city took possession under rates established by the commission designed to yield a fair return on its invest-

ment. In addition, if the commission finds that betterments have been made to the system during that period it will increase its award of just compensation. If it finds that there has been depreciation or deterioration it may decrease the award. And if it finds that "by reason of other acts and occurrences subsequent to" the date of the filing of the original petition fairness to the parties in the award of just compensation requires a revision of the original award upward or downward there is full power in the commission to make the adjustment.

Superimposition of the "interest-less-benefits" formula of Code of Civil Procedure section 1255b would create confusion, if not chaos. This is true whether the striking of the account were to be undertaken by jury or court or even by the commission. It would, as we see it, frustrate the efforts of the commission to apply the formula of Public Utilities Code section 1417 outlined above. This cannot have been the intent of the Legislature.

Public Utilities Code section 1421 contains the statement: "The procedure provided in this chapter shall be *alternative*. . . ."[5] (Italics added.)

We asserted above that the proceedings set forth in the Public Utilities Code to reach just compensation through the commission are *sui generis*. In *Sacramento Municipal Utility Dist.* v. *Pacific Gas & Elec. Co., supra,* at page 646, the court calls it: "a special proceeding in eminent domain and one which controls over a general code provision that is not clearly applicable to such a proceeding." (See also *Marin Municipal Water Dist.* v. *Marin Water & P. Co.,* 178 Cal. 308, 314, 317 [173 P. 469].)

We hold it was the legislative intent that, where the public agency elects to condemn the property of a public utility under Public Utilities Code section 1401 et seq., increases or decreases in the original award covering the period after the filing of the petition and until the condemner takes possession shall be made exclusively by the commission under sections 1417-1419; that Code of Civil Procedure section 1255b, providing for interest-less-benefits during

---

[5]The section also preserves the right of the public agency to "pursue any other procedure providing for the acquisition under eminent domain proceedings of the lands, property, and rights of any public utility," (i.e., it may follow the general condemnation provisions of the Code of Civil Procedure). (See *Citizens Utilities Co.* v. *Superior Court, supra.*)

this period, is inapplicable; that California Constitution article XX, section 22 has no application to special proceedings under statutes enacted pursuant to article XII, section 23a.

The "final" order of condemnation made here provides: "Plaintiff fully has and owns the lands, properties and rights sought in said proceeding. . . ." This statement is that usual in a final order in condemnation proceeding where *full* compensation has already been paid. The utility contends that such statement was made in this order prematurely, since, if its petition before the commission is fruitful, full compensation has not been ascertained and paid, and, it argues, title cannot pass until it has been.

Under the guaranty of due process under the Fourteenth Amendment of the United States Constitution it has been said in *Joslin Mfg. Co.* v. *Providence,* 262 U.S. 668 [43 S.Ct. 684, 67 L.Ed. 1167, 1175]:

". . . It has long been settled that the taking of property for public use by a state or one of its municipalities need not be accompanied or preceded by payment, but that the requirement of just compensation is satisfied when the public faith and credit are pledged to a reasonably prompt ascertainment and payment, and there is adequate provision for enforcing the pledge. [Citing cases.]"

It is stated in *Brick* v. *Cazaux,* 9 Cal.2d 549, 554 [71 P.2d 588], that in California condemnation proceedings the title to the property condemned does not vest in the public until payment of compensation has been made. That case had reference to *general* condemnation proceedings, and the citation given as authority for the statement is Code of Civil Procedure section 1253. Public Utilities Code section 1401 et seq. covering the special proceedings involved here do not expressly state when title shall pass.

They do provide that the supplemental proceedings under Public Utilities Code sections 1417-1419 shall not "act as a stay of the judgment in condemnation, but upon the payment of the just compensation fixed in the original judgment of condemnation the plaintiff in the action shall be entitled to immediate possession of the lands, property, and rights." (Pub. Util. Code, § 1419.)

The interlocutory judgment of condemnation here not only recited the provisions of said section 1419, but also contained the following:

"... [U]pon payment of the $2,206,000, subject to modification as provided in Paragraph VI above, to the defendant, or deposit of the moneys in Court for the defendant, the Court shall enter a final order of condemnation adjudging and decreeing that the said condemnation and taking shall be complete and final and that plaintiff shall fully have, own and possess the lands, properties and rights sought in this proceeding comprising the municipal water system referred to in Paragraph VI hereof for the uses and purposes set forth in the complaint herein."

The city's position is that since this judgment was appealed from, affirmed on appeal and is now final, the provision above quoted is the law of the case and that the "final" order of condemnation was made strictly in accordance with this provision and is itself, therefore, not subject to another attack. The city also points out that payment of any award which the commission may make will be certified to the court and that "[t]he court shall thereupon modify its judgment so as to conform with the finding of the commission. The judgment of the court, as thus modified, insofar as it refers to the just compensation to be paid for the lands, property, and rights, shall be final. . . ." (Pub. Util. Code, § 1419.) This means, of course, as stated above, that the order here appealed from is not actually the final order in these proceedings, although labeled as such. The city argues further that any additional sums ordered to be paid by the *really final* judgment hereafter to be made which may exceed the bond sale proceeds already in reserve are amply secured by the city's obligation to pay the judgment as finally modified and by its revenue-raising power to raise the funds by taxation for such payment.

We believe the city's position is sound. The question whether full and absolute title has or has not passed, however, seems at this point a battle of semantics and an academic one to boot. Wherever the legal title may repose, and whatever its extent may be, the law has given to the city the present right to possess, use and enjoy the condemned water system. If an additional award is made, prompt payment of the modified judgment therefor will set the matter at rest. Only in the event that such a judgment is not so paid will the question of the extent of the city's title become important. Upon the happening of that contingency, nothing

in said order appealed from or in this decision will deny the utility its day in court.

The order appealed from is affirmed.

Schottky, J., and Friedman, J., concurred.

A petition for a rehearing was denied August 2, 1963, and appellant's petition for a hearing by the Supreme Court was denied September 4, 1963.