[Civ. No. 46314. First Dist., Div. One. Dec. 14, 1979.]

DAWN HARLAND et al., Plaintiffs and Respondents, v.
THE STATE OF CALIFORNIA, Defendant and Appellant.

COUNSEL

Richard G. Rypinski, John P. Horgan, Lee Tyler, Robert J. DeFea and Kenneth G. Nellis for Defendant and Appellant.

E. Robert Wallach, David B. Baum and Victoria J. De Goff for Plaintiffs and Respondents.

OPINION

**GRODIN, J.**—We are called upon to decide whether the State of California, like other parties to litigation, is obligated to pay interest on a judgment obtained against it in a tort action. We hold that it is so obligated by applicable provisions of the California Constitution, and on that ground we affirm the judgment below.

Plaintiffs in the underlying action (respondents here) sued the State of California (hereinafter appellant) for personal injuries and wrongful death caused by an automobile accident on the Benicia-Martinez Bridge in October 1970, and in July 1975 they obtained judgment from the Superior Court in Contra Costa County in the aggregate amount of $3,582,350 based on a jury verdict finding the state responsible for the accident and the consequent deaths and injuries.[1] The state appealed from the judgment, and on November 29, 1977, the judgment was affirmed on the basis of evidence showing the state had maintained the bridge in a dangerous and defective condition. (*Harland* v. *State of California* (1977) 75 Cal.App.3d 475 [142 Cal.Rptr. 201].) The state's petition for hearing was denied by the California Supreme Court on January 26, 1978.

---

[1]On October 26, 1970, respondents, then 11 to 13 years of age, were on their way home from a Girl Scout outing when the pickup in which they were riding was struck head-on by a vehicle which had crossed the center line of the highway. The parents of two of the girls were killed in the collision, and the girls suffered serious injuries in the form of cuts, broken bones, and burns. Lisa and Trudy Harrington received judgment in the amount of $788,600 for the wrongful death of their parents; and the girls received judgments in the following amounts for personal injuries: Dawn Harland, $1,855,150; Susan Cashman, $250,100; Trudy Harrington, $550,000; Lisa Harrington, $10,350; Kirsten Stewart, $105,550; and Julie Kongshoy, $22,600.

On May 16, 1978, the state paid each plaintiff in accordance with the judgment but refused to pay interest on the amounts.[2] Respondents filed a motion in the trial court for orders and judgment establishing the amounts of accrued interest in specified amounts, and on June 16, 1978, the trial court issued its "Order Establishing Amount of Accrued Interest and Judgment Therefore [*sic*]" from which the state has appealed.

Article XV, section 1 of the California Constitution was adopted in June 1976 as part of a constitutional revision, but its predecessor, article XX, section 22, dates back to 1934. The section was amended in 1978 in ways which both parties concede do not affect the issue presented here. The first three paragraphs of section 1 deal with the rate of interest chargeable on loans. The last three paragraphs, relevant here, read presently as follows: "The rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum. Such rate may be variable and based upon interest rates charged by federal agencies or economic indicators, or both. [¶] In the absence of the setting of such rate by the Legislature, *the rate of interest on any judgment rendered in any court of the state shall be 7 percent per annum.* [¶] The provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith."

■ Article XV, section 1 by its terms applies to "a judgment rendered in any court of this state," and contains no exceptions for the state or any other class of defendant. The section has repeatedly been interpreted to permit recovery of interest on judgments against the state and its political subdivisions. In *Bellflower City School Dist. v. Skaggs* (1959) 52 Cal.2d 278 [339 P.2d 848], in which a school district appealed from an order allowing interest upon certain condemnation awards made in favor of property owners, the court described the predecessor section to article XV, section 1 as a "constitutional mandate for the payment of interest on judgments" (*id.*, at p. 281), and held that the statute regarding condemnation proceedings did not purport to declare that a judgment bears interest only after it becomes final, "nor could it so modify the Constitution." (*Ibid.* See also *People v. Superior Court (Bank of America)* (1956) 145 Cal.App.2d 683, 690-691 [303 P.2d 628] (holding that the Department of Public Works was constitution-

---

[2]According to the declaration filed by respondents' attorney in the trial court, this was but the second time in his lengthy experience that the appellant had ever asserted such a position.

ally required to pay interest upon a judgment in condemnation); *City of Los Angeles* v. *Aitken* (1939) 32 Cal.App.2d 524, 527 [90 P.2d 377] [disapproved on other grounds, *Southern Public Utility Dist.* v. *Silva* (1956) 47 Cal.2d 163, 165 (301 P.3d 841)] (holding that a condemnee was entitled to interest on a condemnation award pending appeal even in the absence of specific statutory provision for interest, on the ground that "The right to recover interest on a judgment is given by section 22, article XX, of the Constitution...").)[3] In the one reported case in which the state contended as a general matter that it was not liable for postjudgment interest in the absence of statutory authority, the court responded curtly, "The rule is settled the other way in a long line of California cases. [Citations.]" (*Connecticut Gen. Life Ins. Co.* v. *State* (1941) 47 Cal.App.2d 88, 89 [117 P.2d 377]. See also Van Alstyne, Cal. Governmental Tort Liability (Cont.Ed.Bar 1964) § 9.15, p. 424; 4 Cal. Law Revision Com. Rep. (1963) 1001, 1018.) And in 1978, when the people voted upon an amendment to article XV, section 1 allowing the Legislature to provide for interest on judgments up to 10 percent, the voters pamphlet contained the following observation by the legislative analyst: "The fiscal effect of this amendment on state and local government would depend upon action by the Legislature. The interest on judgments would be increased if legislation was enacted raising the rate. *Because the state and local governments both pay and receive interest on judgments,* an increase in the interest rate would affect both their revenues and their costs." (Cal. Ballot Pamp., Primary Elec. (June 6, 1978) italics added.)

Largely ignoring this history, and treating the issue as if it were one of first impression, appellant places principal reliance for its constitutional argument on *Regents of University of California* v. *Superior Court* (1976) 17 Cal.3d 533 [131 Cal.Rptr. 228, 551 P.2d 844], and *City of North Sacramento* v. *Citizens Utilities Co., supra,* 218 Cal. App.2d 178.[4] Neither case provides support. In *Regents* the question

---

[3]Appellant contends that the "real basis" for these three decisions is that interest upon condemnation judgments is mandated by the constitutional provision requiring the payment of just compensation when private property is taken or damaged for public use. The explicit reference in the opinions to the predecessor of article XV, section 1 belies that contention. In *City of North Sacramento* v. *Citizens Utilities Co.* (1963) 218 Cal.App.2d 178 [13 Cal.Rptr. 538], the court cited these cases for the proposition that "an interlocutory judgment in a general proceeding in eminent domain has been held to be a 'judgment' under this constitutional provision," referring to then article XX, section 22. (*Id.,* at p. 186.)

[4]Appellant contends in its brief that "The cases are legion holding that interest cannot be recovered against the State in the absence of a specific statutory authorization,"

was whether the University of California, acting in the capacity of manager of its endowment fund, was subject to the constitutional provisions and statutes pertaining to *usurious loan transactions.* The portion of then article XX, section 22 pertaining to usurious loan transactions did not contain the sweeping language of the portion pertaining to interest on judgments, but rather proscribed usury by any "person, association, copartnership or corporation." Even so, the court held the constitutional provision and the closely related usury statute to be applicable to the university, noting in the case of both that "There is no express exception from the usury laws for the state, its subdivisions or agencies." (17 Cal.3d at p. 536.) ■ The court spoke of a canon of *statutory* construction to the effect that "'[I]n the absence of express words to the contrary, neither the state nor its subdivisions are included within the general words of a statute'" (*ibid.,* italics added), but observed that this principle applied only when the application of general laws to the state or its subdivisions might intrude upon their "'sovereign governmental powers,'" and found no such intrusion in application of the general usury statute to the university. (*Id.,* at pp. 536-537.) The canon would seem to have little if any application to the interpretation of a *constitutional* provision, and even if it were applicable the state has suggested no reason why liability for interest on a judgment interferes with sovereignty any more than the judgment itself.

*City of North Sacramento* is no more helpful to appellant's cause. There, the court held that a municipality which instituted condemnation proceedings to acquire a water system owned by a utility company was not obligated to pay interest on the final order of condemnation. It reached this result on the grounds that the legislative intent as reflected in applicable provisions of the Public Utilities Code was not to allow such interest, and that this result was constitutionally permissible in light of then article XII, section 23a of the state Constitution, which authorized the Legislature to confer upon the Public Utilities Commission "'plenary'" power and jurisdiction to fix "'the just compensation'" to be paid for the taking of any property of a public utility in eminent domain proceedings. (218 Cal.App.2d at p. 186.) The Constitution declared legislative power in that regard to be "plenary and to be

---

and calls the court's attention to *Sanders* v. *City of Los Angeles* (1970) 3 Cal.3d 252 [90 Cal.Rptr. 169, 475 P.2d 201]; *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649]; *People* v. *Union Oil Co.* (1957) 48 Cal.2d 476 [310 P.2d 409], and various decisions of the Court of Appeal. All the cases cited by appellant for this proposition refer to *pre*judgment interest, however. The distinction is made quite clear in *Connecticut Gen. Life Ins. Co.* v. *State, supra,* 47 Cal.App.2d 88, 89.

unlimited by any provision of this Constitution." Since article XX, section 22, providing for interest on judgments, contained similar language of supersedure the court was confronted with what appeared on its face to be an irresistible force colliding with an immoveable object. Avoiding the collision, the court reasoned that interest is part of "just compensation" in a condemnation case, and concluded in the context of the specific clause that "control over the question of its allowance is a legislative matter unhampered by the constitutional provision that general judgments bear interest. (Cal. Const., art. XX, § 22.)" (218 Cal.App.2d at p. 187.) The court characterized a condemnation proceeding under the Public Utilities Code as "*sui generis* and covered by a separate constitutional authorization." (*Id.*, at p. 186.)

■ Appellant seems to argue that article III, section 5 of the state Constitution, which reads, "Suits may be brought against the state in such manner and in such courts as shall be directed by law," constitutes analogous authority to the Legislature to preclude recovery of interest on judgments in tort actions. But in *Muskopf v. Corning Hospital District* (1961) 55 Cal.2d 211, 218-219 [11 Cal.Rptr. 89, 359 P.2d 457], the Supreme Court held that section to be without substantive significance except as a consent to suit. While the section has been interpreted as empowering the Legislature to impose conditions, such as the filing of a claim within a specified period, as a prerequisite to commencement of an action against the state or one of its agencies (e.g., *Lattin v. Franchise Tax Board* (1977) 75 Cal.App.3d 377, 380 [142 Cal.Rptr. 130]; *Smith v. City and County of San Francisco* (1977) 68 Cal.App.3d 227, 230 [137 Cal.Rptr. 146]; *Chase v. State of California* (1977) 67 Cal. App.3d 808, 811 [136 Cal.Rptr. 833]; *Carr v. State of California* (1976) 58 Cal.App.3d 139, 143 [129 Cal.Rptr. 730]), we find no authority in support of the proposition that the section empowers the Legislature to immunize the state, when it has been validly sued and judgment against it sustained, from the general obligation for interest imposed by the expressly superseding provisions of article XV, section 1.

In any event, the Legislature has decreed no such result. Nothing in the Tort Claims Act (Gov. Code, § 810 et seq.) purports to relieve the state from liability for interest on judgments properly rendered against it. Government Code section 815 restores sovereign immunity in California except as provided in the Tort Claims Act or other statute. (*Williams v. Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453,

548 P.2d 1125].) "[T]he intent of the act is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances; immunity is waived only if the various requirements of the act are satisfied." (*Ibid.*) Here, however, there is no question but that plaintiffs-respondents have complied with all applicable requirements.

The state argues that the Tort Claims Act *impliedly* precludes state liability for interest on tort judgments against it. This argument is based upon the fact that the act makes reference to interest on judgments against local public entities (Gov. Code, § 970.4) but contains no similar reference to interest on judgments against the state. The argument is buttressed by reference to former Government Code section 652 which, appellant contends, *did* make provision for interest on judgments against the state,[5] but which was repealed by the Tort Claims Act. The "relevant section applicable to the State," Government Code section 965.2, simply refers to the Controller drawing his warrant "for the payment of any final judgment." The repeal of section 652 and the omission of any comparable provision applicable to the state reflects, appellant argues, a legislative intent that interest on judgments against the state is not allowed.

The argument is defective in several respects. First, it is apparent from the language of former section 652 that it pertained to *prejudgment*, rather than postjudgment, interest. Second, section 965.2 is not in any sense a successor to section 652. Rather the Law Revision comment to this section states that it is derived from former Government Code sections 653 and 654, both of which pertained to the procedures for payment of judgments by warrant, and neither of which related to interest at all. Finally, the legislative history of section 970.4 does not support the negative implication ascribed by appellant. When the Tort Claims Act was enacted in 1963, it prescribed various means by which local public entities could meet their judgment obligations arising out of tort. (Gov. Code, §§ 970-978.8.) The relevant sections contained no mention of interest on judgments. It was, nevertheless, quite clear (as we have previously discussed) that cities and counties were required to

---

[5]The predecessor of Government Code section 652 was enacted in 1893 (Stats. 1893, ch. 45, p. 57.) Thus, appellant's theory leads to the conclusion that interest was recoverable on judgments against the state from 1893 to 1963, but no longer.

pay interest after judgment. In 1975, Government Code sections 970.4 and 970.6 were amended. (Stats. 1975, ch. 285, §§ 4, 5.) Interest on judgments was mentioned for the first time in both sections, and the payment scheme was expanded to include inverse condemnation judgments. One effect of the amendments was to permit the local public entity to pay the interest, as well as the judgment, in the current fiscal year, or in the next fiscal year, or by installment. (See, *Selected 1975 California Legislation* (1976) 7 Pacific L.J., pp. 533-534.) The reference to interest in section 970.4 clearly imposed no new obligation on the part of the public entities to pay interest on judgments. The most logical inference from the fact that the Tort Claims Act as adopted in 1963 made no reference to the liability of *either* state or local governments for interest on judgments is that the Legislature assumed such liability to be constitutionally imposed.

Appellant points to the proposition that a judgment against the state may be paid only out of appropriated funds (*Westinghouse Electric Co. v. Chambers* (1915) 169 Cal. 131, 135 [145 P. 1025]) and argues it would be inappropriate to impose such a "penalty" upon the state because of its own "discretionary decision" regarding payment of judgments. But the argument misconceives the function of interest on judgments. Interest is not awarded as a penalty for nonpayment; indeed, the state has every right, as any other litigant, to seek appellate review of a judgment it considers to be wrong. Interest is awarded because the party who has retained the money has had its use and benefit while the party who has been entitled to the money has been deprived of the opportunity to use it. (See *Antonio* v. *Hempel* (1977) 71 Cal.App.3d 128, 130-131 [139 Cal.Rptr. 309]; cf. *Nordahl* v. *Department of Real Estate* (1975) 48 Cal.App.3d 657, 664 [121 Cal.Rptr. 794]; *Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 814 [148 Cal.Rptr. 22, 582 P.2d 109].) In fact, during a period of high interest rates such as prevailed between the time of this judgment and its ultimate payment, the payment of the legal rate of interest upon the judgment will not adequately compensate the plaintiffs for their loss. The problem is aggravated by inflation, which tends to make future dollars worth less than current dollars. The result sought by appellant would in fact provide the state with incentive to defer payment of every judgment for so long as possible. Insofar as public policy provides a guide to interpretation, neither the Constitution nor the Tort Claims Act can reasonably be viewed as imposing that sort of detriment upon citizens who legiti-

mately win a judgment against the state.[6] For these reasons[7] we conclude the trial court acted properly in awarding interest on the judgments, and its order and judgment are affirmed.[8]

Racanelli, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 7, 1980. Manuel, J., did not participate therein.

---

[6]Appellant relies upon a decision of the Supreme Court of Kansas in *Brown* v. *State Highway Commission* (1970) 206 Kan. 49 [476 P.2d 233], to the effect that a *statute* which in general terms provided for the payment of interest on a judgment should not be interpreted as applying to a judgment against the state. The majority reasoned that because of the "sweeping character of the doctrine of sovereign immunity" in Kansas, a statute waiving immunity should be strictly construed. (*Id.*, at p. 234.) The decision provides no support to appellant's argument here, since the payment of interest is in California a constitutional requirement, and since in California immunity exists only by virtue of affirmative legislative action. Moreover, the Kansas court has subsequently limited the effect of *Brown,* holding interest recoverable against the state when sued on an express contract. (*Shapiro* v. *Kansas Public Employees Retirement Sys.* (1975) 216 Kan. 353 [532 P.2d 1081].) In the more recent decision, the court characterized the common law rule precluding allowance of interest in judgments against the state as "a carryover from the theory 'that the king can do no wrong,'" and "untenable in our times." (532 P.2d at p. 1084.) "In our society today," the court reasoned, "money is a commodity with a legitimate price on the market and loss of its use, whether occasioned by the delay or default of an ordinary corporation, citizen, state, or municipality should be compensable." (*Ibid.*) We agree.

[7]In view of our conclusion it is unnecessary to reach the respondents' alternative contention that the state is required to pay interest on judgments by Civil Code section 3287, subdivision (a).

[8]In their brief on appeal respondents for the first time assert entitlement to interest on the sums determined by the trial court to be due. The assertion is based on three theories: (1) that the amounts paid by the state on the original judgments should be applied first to interest, leaving the sums determined by the trial court due as unpaid principal; (2) that the determination by the trial court constitutes a "judgment" within the meaning of article XV, section 1, with respect to which interest is therefore payable as on the original judgment; and (3) that the money which appellant currently owes falls within the application of Civil Code section 3287, subdivision (a). Appellant, in addition to asserting the impropriety of raising the issue in this manner, argues that the agreement which the parties entered into at the time the state paid the amounts of the underlying judgments included an agreement that payment and acceptance of the principal amount stopped any further interest from accruing, that it in any event constituted an agreement to apply the payments to principal and not to interest, and that apart from the agreement respondents are barred from seeking additional interest by doctrines of estoppel or invited error, waiver or error consented to, a point not properly raised below, and theory of trial doctrine. While respondents urge us to provide guidance on this issue notwithstanding the fact that it is raised for the first time on appeal by a nonappealing party, it is apparent that appellant's arguments raise factual questions which are so intertwined with legal questions as to make meaningful guidance exceedingly difficult. We therefore decline to pass upon respondents' assertion, without prejudice to their right to advance it pursuant to appropriate procedures.